TEXAS FIDELITY & BONDING CO. v. GENERAL BONDING & CASUALTY INS. CO. (No. 105–2944.)

(Commission of Appeals of Texas, Section B. Nov. 19, 1919.)

1. CORPORATIONS ☞374—ULTRA VIRES ACTS; INCIDENTAL OR CONSEQUENTIAL POWERS NOT EXPRESSLY PROHIBITED.

The doctrine of ultra vires ought to be reasonably understood and applied, and whatever may fairly be regarded as incidental to, or consequential upon, those things which a corporation has been authorized to do ought not, unless expressly prohibited, be held by judicial construction to be ultra vires.

2. CORPORATIONS ☞484(2) — ULTRA VIRES ACTS; POWER TO INDEMNIFY SURETY UPON BAIL BOND.

A corporation, having the power in its charter to act as surety on any bond required in the course of any judicial proceeding may enter into an indemnity agreement to indemnify a surety on a bail bond, the character of the instrument by which the corporation binds itself being immaterial, where it in fact furnished security on the bond.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by the Texas Fidelity & Bonding Company against the General Bonding & Casualty Insurance Company. A judgment for defendant was affirmed by the Court of Civil Appeals (184 S. W. 238), and plaintiff brings error. Reversed, and rendered in favor of plaintiff, as recommended by the Commission of Appeals.

Etheridge, McCormick & Bromberg, of Dallas, for plaintiff in error.

W. J. J. Smith, of Dallas, and W. D. Cardwell, of Wichita Falls, for defendant in error.

MONTGOMERY, P. J. One A. C. Karslake was by three several informations charged with felonies alleged to have been committed in the state of Louisiana. He was arrested and imprisoned. Acting by his attorney he applied to the plaintiff in error, Texas Fidelity & Bonding Company, to become his surety on three bail bonds required under the laws of Louisiana in order to obtain his liberty pending a trial of the causes. The plaintiff in error agreed to sign said bonds as surety upon being indemnified for so doing by the attorneys for Karslake and by the defendant in error, the General Bonding & Casualty Insurance Company, and the payment of a premium of $100.

The General Bonding & Casualty Insurance Company, in consideration of $100 to it paid by Karslake, executed and delivered to the Texas Fidelity & Bonding Company a written agreement by which it agreed to indemnify the fidelity company against all liability as surety on the three bonds. A copy of one of these agreements appears in the opinion of the Court of Civil Appeals. 184 S. W. 238.

The bail bonds were executed by Karslake as principal, and the Texas Fidelity & Bonding Company as surety, and were approved by the proper authority, and Karslake was liberated.

Karslake failed to appear at the time stipulated in the bonds, and thereupon they were forfeited and judgment rendered against the Texas Fidelity & Bonding Company as surety. That company paid the judgments and instituted this suit to recover from the General Bonding & Casualty Insurance Company the amount so paid, with interest and attorney's fees. The defendant in its answer alleged that it was incorporated under the laws of Texas for the purpose of doing a surety, casualty, and liability insurance business, and none other; that it was not authorized and empowered to do business in the state of Louisiana, and that the contract was void for want of authority and corporate power on its part to make it. Both parties to this controversy were incorporated under title 71, chapter 13, R. S. 1911, article 4928 et seq.

The Texas Fidelity & Bonding Company had at the time of the execution of the bonds obtained a permit to do business in Louisiana, but the General Bonding & Casualty Insurance Company had not obtained authority to transact business in that state. The Texas Fidelity & Bonding Company in its petition alleged that Karslake, who was not made a party, was a fugitive from justice, insolvent, and a nonresident of the state. The contract sued on was executed and delivered in this state and all negotiations with reference thereto occurred in this state.

The trial court held that the contract sued on was ultra vires, and rendered judgment that plaintiff take nothing as against the General Bonding & Casualty Insurance Company. This judgment was by the Court of Civil Appeals affirmed. 184 S. W. 238.

Opinion.

In view of the conclusion we have reached upon the principal question, that is the power of the corporation to make the contract, made the basis of the suit, it will not be necessary to consider any other question.

The statute under which the Texas Fidelity & Bonding Company and the General Bonding & Casualty Insurance Company were incorporated, among other things, authorized such corporations to "act as surety and guarantor of the fidelity of employés, trustees, executors, administrators, guard-

ians, or others appointed to, or assuming the performance of, any trust, public or private, under appointment by any court or tribunal, or under contract between private individuals or corporations; also on any bond or bonds that may be required to be filed in any judicial proceeding; also to guarantee any contract or undertaking between individuals, or between private corporations, or between individuals or private corporations and the state and municipal corporations or counties, or between private corporations and individuals." Article 4928, R. S. 1911.

Under this statute the General Bonding Company was authorized to act as surety on any bond required in the course of any judicial proceeding, and was also authorized to guarantee any contract or undertaking between individuals and corporations.

The plaintiff in error argues that the transaction here involved was within the power of defendant in error under both the clause granting power to act as surety and that authorizing the guaranty of contracts and undertakings between corporations and individuals.

Under the clause authorizing the corporation to act as surety it is urged that the effect of the transaction was, so far as the corporation and the rights of its stockholders are concerned identical with the effect which would have resulted from the execution of the bail bonds by the corporation as surety; that as the corporation had the power to pledge its credit for the appearance of the accused, Karslake, to answer the criminal charges, it could do so either directly by signing the bonds, or indirectly by securing another to do so and agreeing to indemnify the actual signer against loss. Under the provision authorizing the guaranty of contracts and undertakings of others the contention is that when the Texas Fidelity & Bonding Company signed the bail bonds as surety at the request of Karslake there arose by implication of law an implied contract or undertaking on the part of Karslake to appear in accordance with the condition of the bonds, or, failing in that, to pay the penalties named in the bonds, and that the defendant in error in legal effect guaranteed that Karslake would comply with his contract or undertaking.

[1] In examining these propositions, we will refer briefly to some of the rules which have been applied in determining whether contracts of corporations are ultra vires. In Attorney General v. Great Eastern Ry. Co., 5 App. Cases, 473, Lord Chancellor Selborne, referring to the doctrine of ultra vires, said:

"This doctrine ought to be reasonably and not unreasonably understood and applied, and that whatever may fairly be regarded as incidental to or consequential upon those things which the Legislature has authorized, ought not, unless expressly prohibited, to be held by

216 S.W.—10

judicial construction to be ultra vires. In the application of the doctrine the court may be influenced somewhat by the special circumstances of the case."

The foregoing was quoted with approval by the Supreme Court of the United States in Jacksonville Ry. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515. In this last case, which involved a contract made by a railroad company by which it procured a lease and undertook to maintain a summer hotel, and to keep the property insured for the benefit of the lessor, it is said:

"Although the contract power of railroad companies is to be deemed restricted to the general purposes for which they are designed, yet there are many transactions which are incidental or auxiliary to its main business, or which may become useful in the care and management of the property which it is authorized to hold, and in the safety and comfort of the passengers whom it is its duty to transport. Courts may be permitted, where there is no legislative prohibition shown, to put a favorable construction upon such exercise of power by a railroad company as is suitable to promote the success of the company, within its chartered powers, and to contribute to the comfort of those who travel thereon."

In Brown v. Winnisimmet Co., 11 Allen (Mass.) 326, Chief Justice Bigelow of the Supreme Court of Massachusetts said:

"We know of no rule or principle by which an act creating a corporation for certain specific objects, or to carry on a particular trade or business, is to be strictly construed, as prohibitory of all other dealings or transactions, not coming within the exact scope of those designated. Undoubtedly the main business of a corporation is to be confined to that class of operations which properly appertain to the general purposes for which its charter was granted. But it may also enter into contracts and engage in transactions which are incidental or auxiliary to its main business, or which may become necessary, expedient, or profitable in the care and management of the property which it is authorized to hold under the act by which it was created."

In Northside Railway Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778, there is a valuable discussion of this question by Chief Justice Gaines, in which he distinguishes between that class of contracts which are within the power of the corporation to make, as incidental to its authorized business, and those contracts which though beneficial are entirely outside the scope of the authorized business of the corporation.

As showing the extent to which the authorities have gone in upholding contracts not strictly within the charter powers of a corporation, but which were made in furtherance of its business, we refer to Munoz v. Brassel (Civ. App.) 108 S. W. 417, in which it was held that a corporation authorized to engage in the wholesale liquor business had

authority in furtherance of its principal business to sign as surety the statutory bond required of a retail liquor dealer. In this case writ of error was denied by the Supreme Court. The principle upon which this case is founded has been approved in many cases in other jurisdictions. See Timm v. Grand Rapids Brewing Co., 160 Mich. 371, 125 N. W. 357, 27 L. R. A. (N. S.) 186, and note.

A corporation is usually granted its powers in general terms, and the means by which the powers granted are to be exercised are left to the discretion of its managing officers. "If the means employed are reasonably adapted to the ends for which the corporation is created they come within its implied or incidental powers, although they may not be specifically designated by the act of incorporation. The meaning is that, except where expressly restricted by charter or statute, corporations take by implication the right to use all reasonable modes of executing their express powers which a natural person might adopt in the exercise of similar powers. They must have a choice of means adapted to ends, and are not to be confined to any one mode of operation. 10 Cyc. 1097.

[2] The corporation in this case had the power to act as surety on bail bonds. The essence of this power is the right to pledge its assets to secure the personal presence of one charged with crime to answer the charge. So far as the rights of the stockholder and the public are concerned, it can make no difference whether its credit is pledged directly by the execution of the bond as surety or by procuring another ·to act as surety and agreeing to indemnify such person. In either case the corporation furnishes the security. The practical effect is the same whether the corporation acted as surety on the bond of Karslake, and thus undertook .to have him present to answer the charges, or agreed to indemnify another as surety if he failed to so appear. The character of instrument which it employed to bind itself is immaterial. If the corporation agreed to, and did, furnish security on the bond by procuring another corporation or individual to execute the bond, it agreeing to indemnify against loss, it was but the method adopted by it of exercising the power which it had to act as surety.

We also think that under its power to guarantee contracts or undertakings entered into by others the contract was within the charter powers of the corporation. The real transaction was: Karslake was confined in prison and desired bail. He applied to the Texas Fidelity & Bonding Company to furnish security. It agreed to furnish the security if protected by the obligation of the defendant in error to indemnify it against loss. Karslake applied to defendant in error to indemnify plaintiff in error against loss, and paid defendant in error for furnishing such indemnity.

The effect of the contract of indemnity was to guarantee that Karslake would comply with the conditions of the bonds, or, if in default, pay the penalties named in the bonds. The real thing done by defendant in error was to guarantee the Texas Fidelity & Bonding Company that Karslake would perform his agreement. So construed, the corporation had express power to enter into the agreement. While there is some technical difference between an agreement to indemnify and a guaranty, yet where the purpose to be accomplished and the liability assumed is practically the same under either form of contract, we do not think a corporation should be permitted to escape liability upon a contract fairly entered into because it adopted the one form of contract rather than the other to accomplish the same result.

We recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and that judgment be here rendered in favor of the plaintiff in error for the sum of $6,024.90, with interest thereon from the 24th day of October, 1914, at 6 per cent.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted· and will be entered as the judgment of the Supreme Court.