THE NORTHSIDE RAILWAY COMPANY ET AL. V.
THOMAS WORTHINGTON ET AL.

No. 252.

1. **Powers of Corporation—Implied.**
   In every express grant there is implied a power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly granted. 568

2. **Implied Powers of Corporation.**
   Whatever be a company's legitimate business, the company may foster it by all the usual means; but it may not go beyond this.   If the means be such

as are usually resorted to; and a direct method of accomplishing the pur-
pose of the incorporation, they are within its powers; if they be unusual,
and tend only in an indirect manner to promote its interests, they are to
be held ultra vires............................................. 568

**3. Same.**
A corporation, created for the purpose of carrying on a business under a
statute, which merely states the nature of the business and does not fur-
ther define its powers, may exercise such powers as are reasonably neces-
sary to accomplish the purpose of its creation; and it may be such as are
usually incidental in practice to the prosecution of the business, and no
more.......................................................... 570

**4. Case in Judgment.**
The Fort Worth City Company and the Northside Street Railway Company
were both organized under the general laws of the State; the purpose of
the first being, "the purchase, subdivision, and sale of lands in cities,
towns, and villages;" and that of the second, "the construction and main-
tenance of street railways." Neither of these companies had the power to
extend its credit to foster the interests of the other (the one being the de-
velopment of a city suburb, the other a railway connecting the suburb with
the city). The issuance by the two companies of joint bonds, dividing the
proceeds, was equivalent to borrowing the money to be divided between
them—each to be the surety of the other. This they could not do in ab-
sence of statutory authority.................................. 570, 571

**5. Powers of Corporation.**
The furtherance of neither company can be considered as reasonably neces-
sary to the business of the other................................. 571

**6. Construction of Charters.**
It seems that the powers of a charter under the general law should be more
strictly construed as to implied powers than if granted under a special act
of the Legislature .............................................. 572

**7. Street Railways.**
The law does not recognize the operation of street railways as the usual
means of carrying out the purpose of a corporation organized to purchase
and subdivide lands, and to sell them in city lots...................... 572

**8. Bonds of Corporation—Constitution.**
Section 6 of article 12 of the State Constitution prescribes, that "no corporation
shall issue stock or bonds except for money paid, labor done, or property
actually received, and all fictitious increase of stock or indebtedness shall
be void." It seems that an indebtedness as surety would be obnoxious to
this, and so prohibited ........................................ 573

**9. Bonds Void in Part.**
The bonds of the two companies would be binding on each to the extent of
value received by it for which they had been issued.................... 573

**10. Same.**
There being no fraud in the transaction whereby the two corporations issued
their joint and several bonds, we see no reason why each should not be
held liable for so much of the indebtedness evidenced by the bonds as it
could legally have bound itself to pay. ............................ 574

**11. Corporation Lending its Credit by Indorsing, etc.**
Nor could the investment company bind itself by indorsing the obligations, in
signing jointly with the street car company for machinery to be used in
running the cars upon the railroad ............................. 574

Error to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

The opinion gives a sufficient statement.

*Walton, Hill & Walton, C. M. Templeton,* and *J. C. Randolph,* for plaintiffs in error, Mrs. Sallie Huffman, Northside Railway Company, and Fort Worth City Company.—1. Corporations created under the Constitution and laws of Texas are without power or authority to employ their stock, means, assets, or other property, directly or indirectly, for any other purposes whatever than to accomplish the legitimate objects of their creation. The bonds, notes, and deed of trust sued on in this case are in violation of express law, constitutional and statutory, and in contravention of the public policy of the State as ordained in her Constitution and enacted in her laws, and are therefore null and void, and were so when executed.

What is ultra vires: Field on Corp., secs. 257, 266, 268, 270, 273; Dill. Mun. Corp., sec. 381; Bouv. Law Dic., "Ultra Vires;" Taylor on Corp., secs. 267, 269; 1 Mora. on Corp., ed. 1882, rule 1, p. 39, secs. 39, 40, 42, 45, 46, 179; Jones on Corp., secs. 172, 219.

Two classes of ultra vires: Field on Corp., sec. 258; 1 Mora. on Corp., ed. 1882, sec. 102; Boone on Corp., secs. 98–100, et seq.

Corporations held with marked strictness to the powers granted and their necessary incidentals: Rev. Stats., art. 589; Brenham v. Bank, 144 U. S., 184; Anderson v. Building Assn., 4 Willson's C. C., sec. 174; Ins. Co. v. Ely, 5 Conn., 560; Loan Co. v. Towner, 13 Conn., 249; Association v. Knight, 35 Pa. St., 472; Mosely v. Brown, 76 Va., 419; Police Jury v. Britton, 15 Wall. (U. S.), 566, 567; Concord v. Robinson, 121 U. S., 165; Claiborne v. Robinson, 111 U. S., 400; Field on Corp., secs. 53, 54; Taylor on Corp., sec. 114; Marble Co. v. Harvey, 20 S. W. Rep., 429; Miller v. Ins. Co., 21 S. W. Rep., 38–41; Bank v. City of Terrell, 78 Texas, 456; Railway v. Davis, 41 Am. Rep., 223; Hardware Co. v. Stove Mfg. Co., ante, p. 468; Pearce v. Railway, 21 How. (U. S.), 443.

2. Two corporations have no power to join in one contract, where, in its entirety, it is not for the purpose of carrying out the legitimate objects of each corporation. In other words, while a corporation can use its property and credit unlimitedly, save to the extent of its capital stock, to accomplish its charter purposes, it has no power to use or pledge either its credit or property to accomplish the charter purposes of another corporation; and any contract for the latter purpose is void and not enforceable, because ultra vires and against public policy. Railway v. Davis, 131 Mass., 257; Pearce v. Railway, 21 How., 443; Beach on Corp., secs. 421–438; Field on Corp., p. 303, and last part sec. 270; Mora. on Corp., 2 ed., sec. 373; Id., ed. 1882, sec. 270.

3. A void contract can not be ratified; the payment of interest on a void contract does not ratify, or validate, or legalize it. Marsh v. Fulton, 10 Wall. (U. S.), 676, et seq.; Davis v. Dickinson, 117 U. S.,

657, 764, 765; Hoffer v. Covington, 118 U. S., 150, 151; East Oakland
v. Skinner, 94 U. S., 225; Buchanan v. Litchfield, 102 U. S., 278;
Dixon Co. v. Field, 111 U. S., 83; Hayes v. Holly Springs, 114 U. S.,
120; Taylor on Corp., secs. 211, 217; 2 Mora. on Corp., sec. 619, note
1; Land Co. v. Laigle, 59 Texas, 345, 346.

4. Bonds or other obligations issued without authority of law by a
corporation, or when their issuance is prohibited by law, or when the
issuance thereof contravenes public policy, carry notice with them,
wherever they go, and into whosesoever hands they fall, of their
illegality.    Their invalidity is on their face, and a purchaser of such
bonds before maturity can not be an innocent purchaser thereof for
value and without notice.    Marsh v. Fulton, 10 Wall. (U. S.), 676, et
seq.; Davis v. Dickinson, 117 U. S., 657, 764, 765; Merrill v. Monticello,
138 U. S., 681, and authorities cited; 94 U. S. (Curtis ed.), 125, 126;
East Oakland v. Skinner, 94 U. S., 255, 256; Beach on Corp., sec. 383;
Mora. on Corp., sec. 492.

5. Corporations can not contract bindingly outside the powers ex-
pressly conferred and those necessarily implied or necessarily incidental
to the powers expressly conferred.    A power has thrown about it im-
plications and incidentals, the exercise of which are necessary to the
execution of the main power; but these incidentals never reach to the
independent, nor embrace subject matter outside the scope of the con-
ferred power.    Railway v. Davis, 131 Mass., 257; Pearce v. Railway,
24 How., 443; Trans. Co. v. Pullman, 139 U. S., 33, et seq.; Hitchcock
v. Galveston, 96 U. S., 350; Alleghany City v. McClurkin, 14 Pa. St.,
81; Bank v. Leavitt, 14 N. Y., 162; Kneeland v. Gilman, 24 Wis., 39;
Chambers v. Faulkner, 65 Ala., 449; Bank v. Dunkin, 54 Ala., 471;
City Council v. Mont. Plank Road, 31 Ala., 76; Grand Lodge v. Wad-
dil, 36 Ala., 313; Alexander v. Searcy, 81 Ga., 536; Hazelhurst v.
Savannah, etc., Railway, 43 Ga., 15; Dobbins v. Mfg. Co., 75 Ga., 23;
Bank v. Erwin, 31 Ga., 376; Harriman v. B. B. Church, 63 Ga., 197;
Hose Co. v. Philpot, 53 Ga., 627; Gunn v. Railway, 74 Ga., 509; Bank
v. Ogden, 47 Ark., 268; Nippenose Co. v. Stadon, 68 Pa. St., 259;
Northside Union, etc., Co. v. Shaw, 37 Wis., 655; Kent v. Mining Co.,
78 N. Y., 159; Skinner v. Smith, 134 N. Y. (Appeals), 240; Scovell v.
Thayer, 105 U. S., 143; Bissell v. Spring Valley, 110 U. S., 162.

*Ross, Chapman & Ross,* for Thomas Worthington and the American
Loan and Trust Company, Trustee, defendants in error.—1. The act
of the Fort Worth City Company and the Northside Railway Company
in executing and issuing the bonds and deed of trust in question was
essential to the transaction of the authorized business of each, was
employing their assets for the accomplishment of the legitimate ob-
jects of their creation, and was not ultra vires.    Const., art. 12, sec.
6; Rev. Stats., arts. 575, 577, 589; Railway v. Robards, 60 Texas, 545;
Railway v. McCarthy, 96 U. S., 267; Fort Worth City Co. v. Smith
Bridge Co., 151 U. S., 294; Allis v. Jones, 45 Fed. Rep., 148; Green's

Brice's Ultra Vires,. p. 37; Cook on Stock and Stockholders, sec. 678; Taylor on Corp., secs. 125, 127, 315; Beach on Corp., 381; Mora. on Corp., 342, 347; Sherman Center Town Co. v. Russell, 26 Pac. Rep., 715; Whetstone v. Ottawa University, 13 Kan., 320.

2. The issuance of the bonds and deed of trust was not in violation of the Constitution of Texas. Const., art. 12, sec. 6; Mathis v. Pridham, 20 S. W. Rep., 1022; Railway v. Dow, 120 U. S., 287; Cook on Stock and Stockholder, sec. 26; Railway v. Thompson, 103 Ill., 616; Stein v. Howard, 65 Cal., 616.

3. The execution and issuance of the bonds and deed of trust was not in violation of any statute of Texas. Rev. Stats., arts. 577, 589; Bond v. Terrell Mfg. Co., 82 Texas, 309; Fort Worth City Co. v. Smith Bridge Co., 151 U. S., 294; Bank v. Case, 99 U. S., 633; Bank v. Whitney, 103 U. S., 99; Mining Co. v. Bank, 96 U. S., 640; Swope v. Leffingwell, 105 U. S., 633; Zabriskie v. Cleveland, 23 How., 381; Whitney v. Wyneaw, 101 U. S., 392; Taylor on Corp., secs. 280, 281, 295; Mora. on Corp., secs. 669, 673, 674, 680; Spelling on Corp., sec. 764; End. Interp. of Law, sec. 458; Sedg. Con. Stat., p. 87; Sistre v. Bank, 33 Md., 558; Vandall v. S. S. F. Dock, 40 Cal., 83,' 88; Whitney Arms Co. v. Barlow, 63 N. Y., 62; Bissell v. Railway, 22 N. Y., 258; Bradley v. Ballard, 53 Ill., 413; Gordon v. Preston, 26 Am. Dec., 75; Darst v. Gale, 83 Ill., 136.

4. No public policy of the State was contravened by the issuance of the bonds and deed of trust. Const., art. 12, sec. 6; Rev. Stats., arts. 577, 589; Bond v. Terrell Mfg. Co., 82 Texas, 309; Fort Worth City Co. v. Smith Bridge Co., 151 U. S., 294; Railway v. Dow, 120 U. S., 287; Railway v. Thompson, 103 Ill., 616; Stein v. Howard, 65 Cal., 616; Ins. Co. v. McClelland, 9 Pac. Rep., 771; Cook on Stock and Stockholders, sec. 26.

5. If the contract sued on is ultra vires, but not in contravention of express law or public policy, having been executed on one side, it will be enforced against the other side. Bond v. Terrell Mfg. Co., 82 Texas, 309; Fort Worth City Co. v. Smith Bridge Co., 151 U. S., 294; Railway v. McCarthy, 96 U. S., 25; Beach on Corp., secs. 623, 624; Mora. on Corp., sec. 689; Taylor on Corp., secs. 276, 277; Cook on Stock and Stockholders, sec. 682; Herm. on Estop., secs. 1178, 1179; Railway v. Dow, 19 Fed. Rep., 388; Poole v. West Point, etc., 30 Fed. Rep., 513; Campbell v. Argenta, etc., 51 Fed. Rep., 1; Ellis v. Jones, 45 Fed. Rep., 148; Gordon v. Preston, 26 Am. Dec., 75; Darst v. Gale, 83 Ill., 136.

GAINES, CHIEF JUSTICE.—The following statement of the nature and result in the trial court of this suit is taken from the brief of appellants filed in the Court of Civil Appeals:

"This suit was instituted in December, 1891, by Thomas Worthington, one of the appellees, and plaintiff below, in the District Court of Tarrant County, against the Northside Railway Company, the Fort

Worth City Company, the Fort Worth Street Railway Company, Mrs. Sallie Huffman, the Thompson-Houston Electric Company, Brownell Car Company, the Smith Bridge Company, and Aldace W. Caswell. The American Loan and Trust Company subsequently became a party plaintiff.

"The main suit was for judgment against the two first defendants on certain joint bonds executed by them, and to foreclose a mortgage, also jointly executed by them, on all their property, property rights, and franchises, to secure the payment of said bonds. The action against the other defendants was collateral in a great measure, if not wholly.

"The Thompson-Houston Electric Company and Brownell Car Company each by cross-bill set up alleged causes of action against the Northside Railway Company and Fort.Worth City Company upon promissory notes which they allege the latter jointly executed, and each sought to foreclose a mortgage alleged to have been executed by the Northside Railway Company.

"There were interventions by other creditors and relief prayed by them, but the issues joined on pleadings of intervenors are not vital, except P. E. Lane, Wallace Hendricks, and George Hendricks, who occupy the same status as plaintiffs.

"The defendants Sallie Huffman and A. W. Caswell, who were joined by the Northside Railway Company and the Fort Worth City Company, made by their pleadings the main issues in the case, and upon which this appeal has been taken and will be prosecuted.

"Contemporaneously with the institution of the suit, a receiver was prayed for by the plaintiffs and appointed by the court, for the benefit of all and whomsoever was concerned.

"The court appointed a master in chancery, to whom was referred all the issues made by the pleadings, including the validity of the bonds, notes, and acceptances sued on, and the deeds of trusts or mortgages given to secure the payment thereof. This master made report, but by agreement it was waived by all parties in so far as report was made passing on validity of the said bonds, notes, etc., and mortgage, which issue was tried as an original question by the court.

"A trial was had, the plaintiffs prevailing, securing judgment on the bonds with foreclosure of the mortgage, order of sale, etc.; the holders of notes securing judgments and foreclosures as well."

The defendants Northside Railway Company, Fort Worth City Company, and Mrs. Huffman, perfected an appeal to the Court of Civil Appeals, where the judgment of the trial court was affirmed.

The Fort Worth City Company and the Northside Street Railway were both organized under the general laws of this State which provide for the creation of private corporations—the purpose of the first, as expressed in its charter, being "the purchase, subdivision, and sale of lands in cities, towns, and villages;" and that of the second, "the construction and maintenance of street railways." They were organ-

ized about the same time, the stock taken by the same persons, with some unimportant exceptions, and in the same proportions. The same persons held the offices of directors, president, and secretary, respectively, in each company. The city company acquired title to a tract of land consisting of about 1400 acres, lying north and northwest of the city of Fort Worth, and laid it out in streets, alleys, blocks, and lots, for the purpose of selling to settlers and of building up the suburb. The street railway was projected to extend from a point in the city to and through the city company's property. There was testimony to show, that the street railway was calculated to enhance the value of the lots, if not necessary to enable the city company to sell them at a profitable price; and also, that it was essential to build up the suburb in order to make the street railway a paying investment. Such was the condition of affairs when the bonds in controversy were executed. The city company needed a large sum of money to pay off an indebtedness and for other purposes, and the street railway company needed funds for the construction and equipment of its line of street railway. The officers of the two corporations thereupon agreed to issue a series of bonds, 150 in number, and for $1000 each, to be executed by the two corporations jointly, and to be secured by a mortgage on their property. The formalities of the law having been complied with, the bonds were issued and sold at 95 cents on the dollar, and the plaintiff Thomas Worthington became the holder of those here sued upon, 142 in number.

It is contended on behalf of the plaintiffs in error, that the execution of the bonds was ultra vires, and that therefore they are void. In determining this question, we may recur to a few leading principles. Corporations are the creatures of the law, and they can only exercise such powers as are granted by the law of their creation. An express grant, however, is not necessary. In every express grant, there is implied a power to do whatever is necessary or reasonably appropriate to the exercise of the authority expressly conferred. The difficulty arises, in any particular case, whenever we attempt to determine whether the power of a corporation to do an act can be implied or not. The question has given rise to much litigious controversy, and to much conflict of decision. It is not easy to lay down a rule by which the question may be determined; but the following, as announced by a well known text writer, commends itself not only as being reasonable in itself, but also as being in accord with the great weight of authority:

"Whatever be a company's legitimate business, the company may foster it by all the usual means; but it may not go beyond this. It may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have however determined that such means shall be direct, not indirect; i. e., that a company shall not enter into engagements, as the rendering of assistance to other undertakings from which it anticipates a

benefit to itself, not immediately, but immediately by reaction, as it were, from the success of the operations thus encouraged—all such proceedings inevitably tending to breaches of duty on part of the directors, to abandonment of its peculiar objects on part of the corporation." Green's Brice's Ultra Vires, 88.

In short, if the means be such as are usually resorted to and a direct method of accomplishing the purpose of the incorporation, they are within its powers; if they be unusual and tend in an indirect manner only to promote its interests, they are held to be ultra vires. For example, a railroad company may establish and maintain refreshment houses along its line for the accommodation of its passengers. Flanagan v. Railway, L. R., 7 Eq., 116. Such establishments are not unusual, are strictly subordinate to the main purpose for which such companies are created, and tend immediately to increase their traffic. So it has been held, that a railroad corporation has the power to contract with the owner of a steam vessel to maintain a through traffic and carry beyond its line, and that it can recover of the owner of such vessel damages to goods resulting from its unseaworthiness, for which the company have had to pay. South Wales Railway Company v. Redmond, 10 C. B., N. S., 675. It is now generally recognized, that a railway company may contract to carry beyond its line, and it would seem to follow, that a reasonable traffic arrangement with another carrier for through transportation is legitimate. On the other hand, in Coleman v. The Eastern Counties Railway Company, 10 Ber., 1, the performance of a contract by which the company sought to establish a line of steamships between a terminus of one of its branches and a foreign port, and by which it attempted to guarantee a dividend on the venture, was enjoined. Upon a hasty consideration, the two cases may appear not clearly distinguishable; but we think them entirely consistent, and that they well illustrate the rule which we have stated. In the former, the contract was subsidiary to the legitimate business of the company, and was such as was reasonable and appropriate to a railroad, one of the termini of which was upon the seashore. It tended directly to increase the traffic of the company. In the latter, the establishment of the line of steamships was not subordinate to the business of the railroad company, but was in its nature a distinct enterprise. It tended to increase the business of the port to which the company's branch line extended, and the increase of the business of the port tended to increase the traffic of the railroad; but this was a mediate, and not a direct result.

As illustrative of the principle which we have announced, we call attention to some cases in addition to those already cited.

In Davis v. Railway, 131 Massachusetts, 258, it is held, that it is beyond the powers of a railway company, or of a corporation organized under the general statutes of Massachusetts for the manufacture and sale of musical instruments, to guarantee the payment of the expenses

of a musical festival. The opinion in that case is by Chief Justice Gray, and is a very able and exhaustive discussion of the question.

In Pearce v. Railway, 21 Howard, 441, it was held, that two railroad companies which had consolidated were not authorized to establish a steamboat line to run in connection with their railroads.

In Plymouth Railway v. Colwell, 39 Pennsylvania State, it was decided, that a railway company was not authorized by its charter to maintain a canal.

In Timkinson v. Railway, Law Reports, 35 Chancery Division, 675, it was held, that a proposed subscription by the company to an institution known as the "Imperial Institute" was not prevented from being ultra vires by the fact that the establishment of the institute might benefit the company by causing an increase of passenger traffic over their line.

To these cases others might be added, but they are sufficient to illustrate the doctrine, that a corporation, created for the purpose of carrying on a business under a statute which merely states the nature of the business and does not further define its powers, may exercise such powers as are reasonably necessary to accomplish the purpose of its creation; and it may be such as are usually incidental in practice to the prosecution of the business, and no more. See Lime Works v. Dismukes, 87 Ala., 344; Searight v. Payne, 6 Lea (Tenn.), 283.

These principles, applied to the facts of this case, lead to the conclusion, that neither the Fort Worth City Company nor the Northside Street Railway Company had the power to extend its credit to foster the interests of the other company. Viewed in the light of the peculiar facts of the case, it is apparent that the building up and settlement of the suburb tended to increase the business of the street railway which connected that suburb with the city of which it was the outgrowth. On the other hand, it is equally clear that the establishment of the street railway tended to promote the enterprise of the other corporation. It is also clear, that the establishment and maintenance of a street railway is not an object which was expressed in the articles of incorporation of the city company, and that the building up of an addition to a city is not a purpose expressed in the charter of the other corporation. That the success of the one enterprise tended to promote the success of the other was not itself sufficient to authorize the one corporation to aid the other, for the reason that the benefit which was to accrue was not the direct result of the means employed.

The transaction in controversy, when properly analyzed and stripped of its form, is one in which the two corporations agreed to borrow a sum of money to be divided between them, and that each should become the surety for the other for the amount received by such other. It is too well settled to require the citation of authority, that a corporation of the character of those in question, in the absence of statutory authority, can not bind itself by accommodation paper executed for the benefit of another party. It follows, that if either corporation in

this case is to be held bound for more than its proportionate amount of the debt incurred, it must be upon the ground that it had power to aid in the prosecution of the business of the other.

Did the street railway company have such power? If it is to be held, that because of the indirect benefits which would result to it from the success of the enterprise, it was authorized by the law to aid in building up the suburb of the city company, then it should also be held, that it had the power to employ its funds and its credit in fostering any other undertaking which was calculated to increase the population of the city of Fort Worth or of any portion of the territory which lies along its line. The effect of that ruling would be to empower every business corporation not only to carry on the very business it was created to prosecute, but also to engage in every enterprise which would tend to increase the volume of its principal business and the revenues to be derived therefrom. This would leave the scope of its operations without any reasonable limit. That such is not the law, the authorities already cited are sufficient to show. Street railways are projected for the carriage for hire of people living within and near cities and towns. Street railway companies are chartered for the specific purpose of establishing and operating street railways, and not to increase the population of the towns and cities through which they are established—though their operation may have that effect, and though an increase of population may result indirectly to their benefit.

The same principles apply to the case of the Fort Worth City Company. The general law in force at the time this corporation was created provided, that a private corporation might be formed for the purpose, among others, of "the purchase, subdivision, and sale of lands in cities, towns, and villages." Laws 1885, p. 59. We construe this to give the power to purchase lands, and to lay them off into streets, blocks, and lots, and to sell them in subdivisions for the purpose of profit. Many enterprises suggest themselves which might be entered into by such a corporation, which would tend to promote the success of the undertaking. As a general rule, there is probably none that would be better calculated to produce that effect than the construction and maintenance of an ordinary railroad. But can it be said that such a corporation has the power to embark its capital in such an enterprise? A limit must be laid down as to the implied powers of a corporation; and with reference to a company chartered for a business purpose, we think the proper line of demarcation is between those powers which are reasonably necessary to the business, or which are usually incident to its prosecution, and those which are not.

It occurs to us, that in determining the powers of a corporation a distinction should be observed between such as are created by special charters and such as come into existence by virtue of authority conferred by a general law. A charter is in the nature of a contract, and it may be, that in construing a special charter we should construe it in the light of the special circumstances attending the enterprise which

was intended to be promoted—as in case of a railroad, its connection with other lines of transportation, whether by water or land, or its terminus at a seaport. The last mentioned circumstance seems to have had a controlling influence upon the court in the case of the South Wales Railway v. Redmond, 10 C. B., N. S., 675, already cited. For example, if the Legislature had the power to grant and had granted a special charter to the city company, and it had appeared that a street railway was necessary to the success of the corporation, and that this fact was known, it may be that the power to construct, or at least to aid the construction of the street railway, would have been implied. But this corporation having been created under a general law, we do not see that it can claim the right, by reason of its peculiar surroundings, to exercise a power which another like corporation could not exercise by reason of different circumstances. Our Constitution provides, that corporations shall be created only by general laws; and it would seem that one purpose of the provision was to prevent the Legislature from granting to one corporation special powers or special privileges. At all events, the general law, as we think, should be construed as a general rule conferring upon each member of each particular class of corporations precisely the same powers.

Cities and towns have grown up without the aid of street railways. The origin of the latter is comparatively very recent. The law does not recognize them as a usual means of carrying out the purpose of a corporation organized to purchase and subdivide lands and to sell them in lots. They are provided for in the general law as a distinct purpose for which corporations may be created. The two enterprises may be of mutual assistance; and if the same persons desire to form two distinct corporations for the prosecution at the same time of two undertakings, with a view to the mutual benefit which may result from the concurrent operation of the two, no reason is seen why they should not do so. But each should confine itself to its proper business, and should not divert its capital or extend its credit to the assistance of the other.

In the case of Fort Worth City Company v. Smith Bridge Company, 151 United States, 294, the Supreme Court of the United States held, that the contract of the city company to contribute to the construction of a bridge across a river which separated its lands from the city of Fort Worth was not ultra vires. The court say: "The object of the creation of the corporation was the acquisition and sale of lands on subdivision, and it can not be successfully denied that the object would be directly promoted by the use of legitimate business methods to render the lands accessible. This involved the expenditure of money or the assumption of liability; but there is no element in this case of any unreasonable excess in that regard, or the pursuit of any abnormal and extraordinary method." The same can hardly be said of the transaction developed in the present case. The argument of the court draws a line between such ordinary means as are gener-

ally necessary to carry out the purposes of the corporation, and such as are abnormal and extraordinary. We think the powers attempted to be exercised by the two corporations in this case, and now in question, fall within the latter class.

Section 6 of article 12 of our Constitution provides, that "no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void." The decisions of the courts upon like provisions in the Constitutions of other States have been such as in most cases to practically destroy its effect. It may be, that it was not intended to prohibit corporations from selling their bonds below par—provided the transaction be made in good faith.

In Memphis, etc., Railway Company v. Dow, 120 United States, 287, the court, in speaking of a similar provision in the Constitution of Arkansas, say: "It is not clear, from the words used, that the framers of that instrument intended to restrict private corporations—at least when acting with the approval of their stockholders, in the exchange of their stock or bonds for money, property, or labor, upon such terms as they deem proper; provided always, that the transaction be a real one, based upon a present consideration, and having reference to legitimate corporate purposes, and is not a mere device to evade the law and accomplish that which is forbidden."

While it may be that the purpose of the section was not to require that the corporation should receive a dollar in money or in value for every dollar of indebtedness created, we should be very reluctant to hold, that it is not essential to the validity of the bonds, as to any excess, that the amount received should bear some reasonable and just approximation to the amount of the indebtedness. If it be said, that there may be corporations whose business may demand that they should have power to sell their bonds greatly below par, the answer is, that it was most probably not the purpose of the framers of the Constitution to foster corporate enterprise upon insufficient capital and credit. But that question is not before us. In this case, for example, the street railway company did not sell its bonds for 30 cents on the dollar; nor did the city company sell for 70 cents. They executed joint obligations and sold them at 95 cents, and divided the proceeds. Neither sold its bonds on their merits, taking what they would bring upon the market. We think they are binding obligations against each of the corporations. The liability of each is in proportion to the amount received by it. For the excess, they received nothing, either in money, labor, or property.

Although the bonds, as we think, are not binding upon either company for so much of their amount as was properly chargeable in the first instance upon the other, it does not follow that they are void as a whole. There is no fraud in the transaction. A fair equivalent was given for the obligations. They were executed under the mistaken idea, that by reason of the benefits which would accrue to each cor-

poration from the concurrent prosecution of the two enterprises, each had the power to extend its credit in aid of the other. The companies bind themselves jointly and severally, and no reason is seen why each should not be held liable for so much of the indebtedness as it could legally have bound itself to pay. Thomas v. Railway, 109 U. S., 522.

The determination of the questions already discussed leaves but little to say in reference to the claims of the Thompson-Houston Electric Light Company and of the Brownell Car Company. The claims of the former consist of certain promissory notes given by the street railway company for certain electric machinery sold it by the electric light company, and indorsed by the city company; those of the latter are certain joint and several notes executed by the street railway company and the city company for certain street cars furnished the street railway company. It follows, from what has been said, that in our opinion those claims are valid debts against the street car company, but not against the city company.

The judgment will be reversed and the cause remanded. Upon another trial, the plaintiff below should have judgment against each of the companies for such proportion of the indebtedness evidenced by the bonds held by him as the amount actually received by such company bears to the amount paid for the bonds, with a foreclosure of the mortgage upon the property of such company. The liability on the bonds held by the intervenors should be apportioned in the same manner. The Thompson-Houston Electric Light Company and the Brownell Car Company should each have judgment, with foreclosure on their respective claims against the street railway company, but not against the city company.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 6, 1895.

Motion for rehearing submitted, and subsequently by consent granted. By consent the writ of error was dismissed.