## W. C. BOWMAN LUMBER COMPANY V. S. B. PIERSON ET AL.

### No. 2749.   Decided May 12, 1920.

### (221 S. W., 930.)

**1.—Corporation—Ultra Vires Contract—Surety.**

A corporation chartered to deal in lumber and building materials and do all things incident and necessary to such business, has no implied power to become surety on a contractor's bond for constructing a building, though such undertaking may promote its sales of building materials to the contractor. (Pp. 544-546).

**2.—Same.**

A corporation has implied power to do whatever will legitimately effect the express purposes of its creation; but not to enter into contracts from which it will receive only an indirect and remote benefit, and which are therefore not necessary nor reasonably appropriate to such purposes, such as pledging its credit to an expected customer in order to enable him to purchase its goods. (P. 545).

**3.—Estoppel—Pleading.**

To hold a corporation estopped from defending a suit upon its contract on the ground that it had received benefit therefrom, such estoppel must be pleaded. (P. 545).

**4.—Case Distinguished.**

The refusal by the Supreme Court of writ of error in Munoz v. Brassel, 108 S. W., 417, is explained on the ground that the ruling therein contrary to the decision here made was not involved in the application for writ of error made in that case. (P. 546).

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Stonewall County.

*D. M. Oldham, Jr.,* for appellant.—A corporation can only act within the legitimate scope of its powers and authority granted to it by law, and these acts are determined by the expressed powers granted to it in its charter, and those reasonably implied as necessary to execute the expressed powers thus granted. Appellant being a private corporation incorporated to do a general lumber business in buying and selling lumber, and not incorporated as a surety or guaranty company, its act of signing said bond as surety is *ultra vires* and void. Northside Ry. Co. v. Worthington, 88 Texas, 562; Rev. Stats. of Tex., art. 665; Deaton Gro. Co. v. International Harv. Co., 105 S. W., 556; South Texas Nat. Bank v. Lagrange Oil Mill, 40 S. W., 328; Morgan v. M. K. & T. Ry. Co., 110 S. W., 973; 10 Cyc., 1109; In re S. P. Smith Lumber Co., 132 Fed., 620.

*R. M. Reed* and *Theodore Mack,* for appellees.—While a corporation can only act within the scope of authority given to it by the terms of its charter and its acts are limited thereby, yet whatever be a corporation's legitimate business, the corporation may foster it by all the usual means, if the means be such as are usually resorted to and are a direct method of accomplishing the purposes of the incorporation. And when such means and methods are so used by a corporation for the purpose of carrying on the business for which it was incorporated they become a legitimate custom of the corporation and are not in violation of statutory provisions governing corporations. Any act, then, of a corporation, tending to show the methods, means or customs usually resorted to by it in carrying on its business would be admissible in evidence when it is similar to one under which such corporation is claiming a defense of ultra vires. Neither can a corporation deny its contracts under a defense of ultra vires when they have been entered into in consideration of receiving benefits therefrom, in the usual course of the business for which it has been incorporated, and the other parties thereto have entered same in good faith and have carried out their part of it. Deaton Groc. Co. v. International Harvester Co., 105 S. W., 558; Steger v. Davis, 27 S. W., 1068. For case in point, see G. E. Wittmar Lumber Co. v. Rice, 55 N. E., 868; Wheeler-Osgood & Co. v. Everitt Land Co., 14 Wash., 630, 45 Pac., 316; Munoz v. Brassel, 108 S. W., 417; Texas Fidelity Co. v. General Bond & Casualty Co., 216 S. W., 144.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The W. C. Bowman Lumber Company is a corporation chartered "to buy, sell, hold and deal in lumber and other building materials, both at wholesale and retail, and generally to do and perform all

matters and things incident or necessary in such business.'' As surety, it signed the bond given by A. T. Robinson, a contractor, to secure his performance of a certain building contract. During the negotiation for the contract, it was agreed between Robinson and the Lumber Company that he would purchase and it would sell him the lumber and other like material needed in the construction of the building if he secured the contract. Upon being awarded the contract, Robinson made such purchases of the Lumber Company. Thereafter, the Lumber Company executed the bond.

In a suit where recovery was sought against the Lumber Company upon the bond, the honorable Court of Civil Appeals for the Second District held that its act in signing the bond was *ultra vires*. Because of the conflict between this holding and that of the honorable Court of Civil Appeals for the Fourth District in Munoz v. Brassel, 108 S. W., 417, at a former term in a mandamus proceeding we directed that the question be certified here for the settlement of the conflict. First National Bank of Aspermont v. Conner, 106 Texas, 549, 172 S. W., 1106.

It does not appear that any estoppel was pleaded against the Lumber Company's assertion that its act in signing the bond was *ultra vires,* based upon the benefit it received through its sale to the contractor of the lumber needed for the building. No estoppel having been invoked, the question is simply one as to the power of the corporation to pledge its credit as a surety for the contractor's undertaking.

Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation. A corporation formed for the prosecution of a business may foster that business by necessary or appropriate means—those means which are direct, in their nature related to the objects of the corporation, and by whose employment those objects will be directly furthered. Under the pretense of fostering its own business, or even for that avowed purpose, it cannot, however, entangle itself in engagements or enterprises not necessary or reasonably appropriate to the advancement of its interests, from which it will receive only an indirect or remote benefit, if any, and with which therefore, as tested by its charter powers and their objects, it can have no true concern.

The pledging by a corporation of its credit for another's benefit as a means simply of enabling him to purchase its goods, is not a direct, and hence not a legitimate, means of promoting its own business. It is a means purely indirect, and any benefit derived by the corporation from the transaction is equally indirect. It is not a fostering of the business of a corporation to pledge its capital as security for the debts of prospective customers for the purpose of enab-

ling them to buy its wares. It is inviting its destruction. The creation of custom by such a method is only a delusive benefit to the corporation at best, for the price of it is to jeopardize its capital, not for its own direct benefit, but for the private advantage of another. Its benefit from such a transaction can be only incidental. Such use of its credit is clearly beyond the power of an ordinary business corporation, such as the Lumber Company here. Northside Railway Company v. Worthington, 88 Texas, 562, 53 Am. St. Rep., 778, 30 S. W., 1055.

While a writ of error was refused by this court in Munoz v. Brassel, the question of the power of the corporation to pledge its credit under the circumstances there shown, was not presented in the application for our review.