RIO GRANDE VALLEY GAS CO. v. GRAND
RAPIDS STORE EQUIPMENT
CORPORATION.

No. 9000.

Court of Civil Appeals of Texas. San
Antonio.

Feb. 15, 1933.

Montgomery, Hall & Taylor, of Edinburg,
for appellant.

Griffin, Kimbrough & Cox, of McAllen, for
appellee.

MURRAY, Justice.

This is an appeal from a judgment in favor
of the Grand Rapids Store Equipment Corpo-
ration, hereinafter called store equipment cor-
poration, against the Rio Grande Valley Gas
Company, hereinafter called gas company.
The case was tried before the court without
a jury in the district court of Hidalgo county,
Tex. Judgment was rendered in favor of
store equipment corporation and against gas
company for the sum of $936.96, including
principal, interest, and attorney's fees. The
suit was for the purchase price of certain of-
fice equipment ordered by the Rio Grande Val-
ley Gas Appliance Company, hereinafter call-
ed appliance company, from the store equip-
ment corporation, and payment being guaran-
teed by John W. Gaines as president of the
gas company. The evidence is clear that the
gas appliance company and the gas company
were two separate and distinct corporations.

One C. W. Cassidy, as salesman for the
store equipment corporation, took the order of
the gas appliance company for the office equip-
ment, and as the gas appliance company had
no credit rating with the store equipment
corporation, John W. Gaines, as president of
the gas company, wrote a letter to the store
equipment corporation guaranteeing the pay-
ment of the bill. Brian Norton, president of
the gas appliance company was the son-in-law
of John W. Gaines, president of the gas com-
pany.

The office equipment was shipped on or
about July 26, 1927, to the gas appliance com-
pany, delivered to it, and the freight was paid
by it. The equipment was shipped on terms
of thirty days net.

This account was not paid at maturity,
and this suit was filed February 5, 1929, seek-
ing to hold the gas company responsible upon
its guarantee, the gas appliance company hav-
ing in the meantime become absolutely insol-
vent.

The gas company, while admitting that its
president had written a letter guaranteeing
payment of this account, denied liability on
the ground that such acts by its president
were ultra vires and not binding on it.

We agree with this contention. It is clear
in this state that one corporation cannot lend
its credit to another corporation. Articles
1348 and 1349, R. C. S. 1925.

Appellee contends that they sold this
equipment direct to the gas company and that
this is not a guarantee agreement but an orig-
inal undertaking on the part of the gas com-
pany. Appellee contends that it did not have
actual or constructive knowledge of any facts
which would render this contract or agree-

ment ultra vires. We cannot agree with this contention. Appellee knew through its salesman, C. W. Cassidy, that this office equipment was for the appliance company and not for the gas company. They knew that the equipment was to be shipped to the appliance company. The letter which it received from the president of the gas company can only be construed as guaranteeing the payment of this account. The body of the letter was as follows: "Rio Grande Valley Gas Appliance Company has placed with you an order for office fixtures aggregating $663.70. Please ship this at your earliest convenience, sending statement through the Rio Grande Valley Gas Appliance Co., to the Rio Grande Valley Gas Co., and the bill will be paid on maturity."

This letter must be construed with the order previously placed by the appliance company with the store equipment corporation. This contract is set out in full in the statement of facts. It is five pages long. It reserves the title to the property until the purchase money is fully paid, and contains many other provisions and stipulations. It is signed by Rio Grande Valley Gas Appliance Company by Brian C. Norton, president, and no one else.

It is clear from this order and this letter that the appellee knew that this furniture was sold to the appliance company, and that the gas company was attempting to guarantee the payment of the account.

■■ Appellee having actual knowledge of the fact that this equipment was for the appliance company, and that the gas company was only guaranteeing the payment of the account, is not now in a position to contend that the gas company is estopped to set up the ultra vires nature of its agreement. Thompson on Corporations (3d Ed.) vol. 3, § 2075, at page 710; 14a C. J. § 2162, at page 313.

However, appellee contends that, if this was an ultra vires agreement, the gas company received a benefit from same, in that the sale of appliances by the gas appliance company would enable the gas company to sell more gas. This was such an incidental and remote benefit as to be of no effect. North Side Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778; City of Indianola v. Gulf, W. T. & P. Ry. Co., 56 Tex. 594; Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S. W. 930, 11 A. L. R. 547; Taylor Feed Pen Co. v. Taylor Nat. Bank (Tex. Civ. App.) 181 S. W. 534, modified (Tex. Comm. App.) 215 S. W. 850.

■ It is contended by appellee that the purchasing of the equipment was within the implied corporate powers of the gas company, and the fact that the gas company exercised such power in an improper manner for the accommodation of another corporation would not affect the validity of the contract, as it was only appellee's duty to determine that the making of the contract was within the general scope of the corporate powers of the gas company. This contention is not tenable where the appellee had actual knowledge that this equipment was ordered by the appliance company and only payment guaranteed by appellant. North Side Ry. Co. v. Worthington, supra.

■ Appellee further contends that appellant ratified this agreement by said Gaines later writing a letter admitting liability, and also prevented it from pursuing other remedies to collect its debts. It is clear that a president of a corporation cannot ratify his own ultra vires acts. This is the holding in the case of Hoffman v. M. Gottstein Inv. Co., 101 Wash. 428, 172 P. 573, 574. In which case is found the following language: "Manifestly he cannot ratify his own act, and it seems clear to us that none of the other officers or stockholders of the corporation have ever ratified the execution of this note in such manner as to estop the corporation from now denying its liability thereon."

See, also, 14a C. J. § 2234 at page 376; Porter v. Winona, etc., Grain Co., 78 Minn. 210, 80 N. W. 965.

The record further shows that appellee was corresponding with the appliance company, trying to get them to pay this account at the same time it was corresponding with appellant. Judge Gaines' letters to appellee contained many expressions sufficient to put appellee on notice that appellant considered itself as only secondarily liable on this account.

The agreement entered into by appellant was ultra vires. Appellee was in possession of such facts as to prevent it from setting up its good faith in entering into this agreement, and is not in a position to plead estoppel against appellant.

The judgment of the trial court is reversed, and judgment here rendered for appellant.