## BAKER et al. v. EDSON HOTEL OPERATING CO. et al.

No. 2938.

Court of Civil Appeal of Texas. Beaumont.

Nov. 25, 1936.

Rehearing Denied Dec. 2, 1936.

Sam G. Croom and C. A. Teagle, both of Houston, and J. L. C. McFaddin, of Beaumont, for appellant.

Duff & Cecil, of Beaumont, for appellees.

WALKER, Chief Justice.

This is a suit by Gladys Wharton Baker joined pro forma by her husband against the Edson Hotel Operating Company, a corporation, and its receiver, Ogden Johnson, the Edson Realty Company, a corporation, the Wilson Holding Company, a corporation, and E. G. Edson to recover the sum of $10,247.80 with interest at the rate of 6 per cent. per annum from the 25th day of September, 1933, and 10 per cent. attorney's fees, the balance due upon a promissory note in the principal sum of $19,238.14 payable to the order of the Baker Corporation, executed by Baker-Beaumont Hotel Company, a corporation (name subsequently changed by charter amendment to Edson Hotel Operating Company) and indorsed by all the other defendants named above. On trial to the court without a jury, judgment was rendered in favor of appellant, Gladys Wharton Baker, for the full amount sued for, against the Edson Hotel Operating Company and its receiver, Ogden Johnson, E. G. Edson, and the Baker Corporation, with judgment in favor of the Baker Corporation over against the named defendants for the full amount recovered by appellant. It was also adjudged that appellant and the Baker Corporation recover nothing against the defendants Edson Realty Company and the Wilson Holding Company, and that these two defendants go hence without day and recover their costs. Conclusions of fact and law were filed in support of the judgment. This appeal was duly prosecuted by Gladys Wharton Baker from that portion of the judgment denying her recovery against the Edson Realty Company and the Wilson Holding Company.

The note in controversy was executed by the Baker-Beaumont Hotel Company and indorsed by the Edson Realty Company, the Wilson Holding Company, and E. G. Edson under the following facts and circumstances: The Edson Hotel in the city of Beaumont was erected by the Edson Hotel Company, a corporation with a capital stock of $500,000, upon certain lots purchased by it from the Edson Realty Company and the Wilson Holding Company. In payment of these lots the Edson Hotel Company issued and delivered to the Wilson Holding Company $100,000 of its capital stock and to the Edson Realty Company $50,000 of its capital stock. To aid further in the erection of the hotel the Wilson Holding Company and the Edson Realty Company purchased $200,000 of the second mortgage bonds of the Edson Hotel Company. This stock and these second mortgage bonds were held by these two corporations at the time they indorsed the note in controversy. The Edson Hotel Company leased the Edson Hotel to one T. B. Baker, who organized the Baker-Beaumont Hotel Company, a corporation, for the purpose of operating the Edson Hotel, and transferred to it the Edson Hotel lease. The capital stock of the Baker-Beaumont Hotel Company was owned as follows—the Baker Corporation 51 per cent., the Edson Hotel 25 per cent., and E. G. Edson 24 per cent. On the 20th day of September, 1930, E. G. Edson, who, at that time, was president and director of the Edson Hotel Company, the Edson Realty Company, and the Wilson Holding Company, entered into the following written contract with the Baker Corporation for the purchase of its 51 per cent. of the capital stock of the Baker-Beaumont Hotel Company, to wit:

"Contract for Sale of Stock:

"This agreement made and entered into at Galveston, Texas, this 20th day of September, 1930, by and between the Baker Corporation, hereinafter called the seller, and E. G. Edson, hereinafter called the buyer, Witnesseth:

"That for and in consideration of the sum of $157,660.00 to be paid to the seller by the buyer as hereinafter set out, the Baker Corporation hereby sells to E. G. Edson and agrees to transfer to him by proper endorsement and delivery 51% of the capital stock of Baker-Beaumont Hotel Company, a Texas corporation.

"The said purchase price shall be paid as follows:

"$75,000.00 in cash upon delivery of the stock
One six months note for $5,000.00;
One six months note for $20,000.00;
One eighteen months note for $19,220.00;
One thirty months note for $19,220.00;
One forty-two months note for $19,220.00;

"All such notes being dated as of the date of delivery of the stock and made payable to the Baker Corporation, except the above mentioned note for $5,000.00, which shall be made payable directly to Franklin Canady; and all said notes to bear interest at the rate of 6% per annum, and to be the obligation either jointly or by endorsement of Baker-Beaumont Hotel Company, the Edson Realty Company, Wilson Holding Company and E. G. Edson.

"The above named price is intended to be the amount of money due to T. B. Baker and the Baker Corporation and its subsidiaries or affiliated companies, plus the amount of cash invested in the capital stock of said company, to-wit: $75,000.00 plus a bonus or premium of $10,000.00. Should the fact be that the amount of money so invested and so owing to the Baker interests as of this date be less. than $147,660 then in such event the above-mentioned price of $157,660.00 shall be reduced accordingly. Should the amount so invested by and so owing to the Baker interests be ascertained to be more than $147,660.00 then in such event the above-mentioned price of $157,660.00 shall be increased accordingly. In the event of increase or decrease in the above-mentioned purchase price in accordance with the above provisions, such increase or decrease shall be added to or deducted from the $20,000.00 note above mentioned.

"In the event any liabilities of Baker-Beaumont Hotel Company are discovered which are not shown by the books and statements of said company at present, such additional liabilities shall be for the cost and account of the seller if incurred for expense accruing prior to the date of this sale, but shall be for the cost and account of the buyer if incurred for an asset of the company.

"It is the intent and agreement of the parties hereto that the transaction therein provided for shall be completely consummated within seven days from this date.

"Witness the signatures of the parties hereto.

"The Baker Corporation, Seller
"By [Signed] P. E. McSween, Vice-President.
"[Signed] E. G. Edson, Buyer.
"Form Approved, F. Canaday."

Two days after the execution of the foregoing contract the board of directors of the Edson Realty Company adopted the following resolutions:

"Whereas, this company (Edson Realty Company) has heretofore acquired large holdings of the common stock and second mortgage bonds of the Edson Hotel Company, and now holds said securities, and

"Whereas, the interests of this company would be safeguarded and made more secure if it owned a large share of the capital stock of the Baker-Beaumont Hotel Company, the corporation operating Hotel Edson, and

"Whereas, an opportunity now presents itself whereby a large part of the capital stock of Baker-Beaumont Hotel Company may be acquired by this company at a fair price, now, therefore,

"Be it resolved, that the President and Secretary of this company be, and they are hereby authorized to buy fifty per cent of the capital stock of the Baker-Beaumont Hotel Company, a Texas corporation, at a price not exceeding Fifty-eight thousand ($58,000.00) Dollars; and to assist the Baker-Beaumont Hotel Company in securing an extension of its present indebtedness to the Baker Corporation by endorsing notes of Baker-Beaumont Hotel Company evidencing such indebtedness, to an amount not exceeding Seventy-Thousand ($70,000) Dollars.

"Be it further resolved, that the President and Secretary of this Company are hereby authorized to further assist the Baker-Beaumont Hotel Company in its financing, when necessary, by loaning to said Baker-Beaumont Hotel Company funds of this company in amounts as needed, to the extent of $143,333.34, said loans to bear interest at 6% per annum payable semi-annually, and to be evidenced by promissory notes maturing on or before one year from date of such advancements,"

and the board of directors of the Wilson Holding Company adopted the following resolutions:

"Whereas, this company (Wilson Holding Company) has heretofore acquired large holdings of the Common Stock and Second Mortgage Bonds of The Edson Hotel Company, and now holds said securities, and

"Whereas, the Edson Hotel Company is also indebted to this company in large amounts for advancements made to said Hotel Company, and

"Whereas, the interests of this Company would be safe-guarded and made more secure if it owned a large share of the

Capital Stock of the Baker-Beaumont Hotel Company, the corporation operating Hotel Edson, and

"Whereas, an opportunity now presents. itself whereby a large part of the Capital Stock of Baker-Beaumont Hotel Company may be acquired by this company at a fair price,

"Now therefore, be it resolved, that the President and Secretary of this Company be, and they are hereby authorized, to buy twenty-five per cent of the Capital Stock of the Baker-Beaumont Hotel Company, a Texas Corporation, at a price not exceeding twenty-nine thousand ($29,000.00) Dollars; and to assist the Baker-Beaumont Hotel Company in securing an extension of its present indebtedness to the Baker Corporation by endorsing notes of Baker-Beaumont Hotel Company, evidencing such indebtedness to an amount not exceeding seventy thousand ($70,000.00) Dollars.

"Be it further resolved, that the President and Secretary of this company are hereby authorized to further assist the Baker-Beaumont Hotel Company in its financing, when necessary, by loaning to said Baker-Beaumont Hotel Company funds of this company in amounts as needed, to the extent of $71,666.67, said loans to bear interest at 6% per annum payable semi-annually, and to be evidenced by promissory notes maturing on or before one year from date of such advancements."

Acting under these resolutions, each of these corporations bought and paid for the amount of stock stipulated in the resolutions. The Baker-Beaumont Hotel Company executed to the Baker Corporation the amount of notes specified in the contract between the Baker Corporation and E. G. Edson, and, acting under the foregoing resolutions, the Edson Realty Company and the Wilson Holding Company indorsed these notes. All of the notes were duly paid except the balance due on the note in controversy, which was transferred to appellant by the written indorsement of the Baker Corporation.

While the Edson Realty Company and the Wilson Holding Company did not make themselves parties to the contract between E. G. Edson and the Baker Corporation, they knew of the execution of that contract and of its terms and conditions.

Appellant's petition was in due form, stating a cause of action upon the note sued upon, with prayer for judgment against all the defendants for the balance

due upon the note. The Edson Realty Company and the Wilson Holding Company answered that their indorsement of the note sued upon was ultra vires and void, and, therefore, they were not liable under their indorsement. Many other issues were raised by the answer of these two defendants and the supplemental pleadings of appellant, but in view of the disposition we are making of the proposition of ultra vires, we pretermit a discussion of the other issues.

## Opinion.

In Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 1056, 53 Am.St. Rep. 778, Judge Gaines, speaking for the Supreme Court, said that it was not easy to lay down a rule by which the question or proposition of ultra vires may be determined. On that point he said: "It is not easy to lay down a rule by which the question may be determined; but the following, as announced by a well-known text writer, commends itself, not only as being reasonable in itself, but also as being in accord with the great weight of authority. 'Whatever be a company's legitimate business, the company may foster it by all the usual means. But it may not go beyond this; it may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have, however, determined that such means shall be direct, not indirect,—i.e. that a company shall not enter into engagements, as the rendering of assistance to other undertakings, from which it anticipates a benefit to itself, not immediately, but mediately by reaction, as it were, from the success of the operations thus encouraged; all such proceedings inevitably tending to breaches of duty on part of the directors, to abandonment of its peculiar objects on part of the corporation.' Green's Brice, Ultra Vires, 88. In short, if the means be such as are usually resorted to, and a direct method of accomplishing the purpose of the incorporation, they are within its powers. If they be unusual, and tend in an indirect manner only to promote its interests, they are held to be ultra vires."

On the same point the Commission of Appeals, speaking for the Supreme Court in Kasch v. Farmers' Gin Co., 3 S.W.(2d) 72, 74, said: "To crystallize the rule, it may be said the implied powers of a corporation embrace those that are reasonably necessary, according to the usual methods

of that particular business, to the successful prosecution of the specific business authorized, and is not limited to those things indispensably necessary to the business, provided always the benefits to be derived from the contract are direct, and not so indirect as to be remote."

The facts of those two cases illustrate what the court had in mind by the rule that the benefits to be derived from the contract must be direct, and not so indirect as to be remote. In the Worthington Case our Supreme Court held that the issuance of bonds by two corporations, one incorporated for the "purchase, subdivision, and sale of lands," and the other for the "construction and maintenance of street railways," to pay off certain valid indebtednesses for one company and to construct a line of railroad for the other, which bonds were secured by mortgages on their joint property, was ultra vires and void, in so far as each company extended its credit to promote the interest of the other. In the Kasch Case defendant in error, Farmers' Gin Company, made a contract to purchase 1,000 bushels of certain "pedigreed cotton seed" to be resold by it to farmers in the vicinity of the gin plant. When sued for the value of the cotton seed, defendant in error answered that the contract of purchase was ultra vires. Denying that contention, Judge Speer, speaking for the Commission of Appeals, said: "The contract upon which the suit was predicated was clearly not within the express powers of the defendant in error corporation. Whether or not it falls within the implied powers must be determined from the principles announced in our decisions. * * * Under the charter of defendant in error, it had the full power to operate and maintain its cotton gin in the usual manner such business enterprises were conducted, and, the purchase of planting seed for disposition to customers having been found by the jury to be customary among gin men, and it being evident that such custom is not only reasonably helpful and necessary, but that it directly contributes to the successful operation of the gin business, the question of the contract's being ultra vires must be settled in favor of the power."

The following additional authorities illustrate the rule of ultra vires: In Deaton Grocery Co. v. International Harvester Co., 47 Tex.Civ.App. 267, 105 S.W. 556, the Deaton Grocery Company guaranteed the payment of certain notes executed to a third party by one of its customers who owed it a large sum of money. At the time of the indorsement this customer was heavily indebted to other parties, and by reason of this indorsement the customer was able to continue in business long enough to pay Deaton Grocery Company a large part of the indebtedness due it. When sued upon its indorsement, the Grocery Company pleaded ultra vires, and the court sustained that defense. In Kaplan Dry Goods Co. v. Sanger Bros. (Tex. Civ.App.) 214 S.W. 485, 486, the court held that an agreement by the corporation to pool its earnings with other corporations for the purpose of paying the debts of the several concerns "contemplated ultra vires acts," and relieved the Dry Goods Company from its contract. In W. A. Morgan & Bros., et al. v. M., K. & T. Ry. Co., 50 Tex. Civ.App. 420, 110 S.W. 978, it was held that a contract by a compress company, in leasing land from a railway company upon which to erect a compress, to indemnify the railroad company for payment for injuries to third persons was an ultra vires act. In W. C. Bowman Lumber Co. v. Pierson, 110 Tex. 543, 221 S.W. 930, 931, 11 A.L.R. 547, the Lumber Company was a corporation, chartered to buy, sell, etc., lumber and other building materials. The Lumber Company signed as surety a bond given by one Robinson, a contractor, to secure the performance of a building contract. During the negotiations for the contract it was agreed between Robinson and the Lumber Company that he would purchase all materials needed in the construction of the building from the Lumber Company, if he secured the contract, and upon being awarded the contract, he made such purchases and the Lumber Company signed the bond. This suit was brought against the Lumber Company on the bond, and in holding that the execution by the Lumber Company of the surety bond was ultra vires the Supreme Court of Texas, speaking through Chief Justice Phillips, used the following language:

"Every corporation is created with certain express powers. Being endowed with these express powers, it has the implied power to do whatever is necessary or reasonably appropriate to their exercise. It has, in a word, the authority to do whatever will legitimately effect the express purposes of its creation. A corporation formed for the prosecution of a business may foster that business by necessary or appropriate means—those means which are

direct, in their nature related to the objects of the corporation, and by whose employment those objects will be directly furthered. Under the pretense of fostering its own business, or even for that avowed purpose, it can not, however, entangle itself in engagements or enterprises not necessary or reasonably appropriate to the advancement of its interests, from which it will receive only an indirect or remote benefit, if any, and with which therefore, as tested by its charter powers and their objects, it can have no true concern.

"The pledging by a corporation of its credit for another's benefit as a means simply of enabling him to purchase its goods, is not a direct, and hence not a legitimate, means of promoting its own business. It is a means purely indirect, and any benefit derived by the corporation from the transaction is equally indirect. It is not a fostering of the business of a corporation to pledge its capital as security for the debts of prospective customers for the purpose of enabling them to buy its wares. It is inviting its destruction. The creation of custom by such a method is only a delusive benefit to the corporation at best, for the price of it is to jeopardize its capital, not for its own direct benefit, but for the private advantage of another. Its benefit from such a transaction can be only incidental. Such use of its credit is clearly beyond the power of an ordinary business corporation, such as the Lumber Company here. Northside Railway Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 53 Am.St.Rep. 778."

In Forty-Acre Spring Live Stock Co. v. West Texas Bank & Trust Co. (Tex.Civ. App.) 111 S.W. 417, 420, the court said: "Ordinarily, a contract of suretyship is foreign to the object for which corporations are created; but there are exceptions to this rule, one of which is that, though not expressly authorized, the corporation may become a surety when it is necessary to enable it to accomplish the object for which it was created, or whenever the particular transaction is reasonably necessary or proper in the conduct of its business."

■ These authorities well support the rule of ultra vires and give a fact illustration of the following proposition announced by Mr. Chief Justice Phillips in W. C. Bowman v. Pierson, supra: "A corporation formed for the prosecution of a business may foster that business by necessary or appropriate means—those means which are direct, in their nature related to the objects of the corporation, and by whose employment those objects will be directly furthered." Recognizing that ordinarily a contract of suretyship or of indorsement is foreign to the object for which corporations are created, yet, when such contracts foster the business of the corporation, and where such contract of indorsement is necessary or appropriate means for prosecution of the corporate business, then such contract of suretyship or of indorsement is not an ultra vires act.

■ Under the facts of this case, no point is made against the corporate right of the Edson Realty Company and the Wilson Holding Company to purchase and hold the stock of the Baker-Beaumont Hotel Company. If these corporations had the corporate right to purchase and hold the stock of the Baker-Beaumont Hotel Company—and, as just stated, that right is not denied by any party to this suit—then these holding corporations had the right to protect their investment. It would be a strange rule of law to give these holding companies the right to purchase and hold stock of the Baker-Beaumont Hotel Company, and then to deny them the right to protect the solvency of their investment. When they purchased their stock in the Baker-Beaumont Hotel Company, these two holding corporations knew of its indebtedness to the Baker Corporation, and they knew that the Baker Corporation was demanding indorsements on that indebtedness. They purchased this stock knowing that this indebtedness would have to be paid. We think clearly that Judge Phillips' proposition quoted above from the Bowman Lumber Company Case sustains the corporate right of the Edson Realty Company and the Wilson Holding Company to indorse this note. It follows, of course, that the act of indorsement was not an ultra vires act, and that these two corporations are liable for the balance due upon the note sued on.

For the reasons stated, the judgment of the lower court is reversed and judgment here rendered in favor of appellant, Mrs. Gladys Wharton Baker, that she recover of and from the Edson Realty Company and the Wilson Holding Company the full amount sued for, and that the Baker Corporation have judgment over against these two defendants for any amount it may be forced to pay appellant upon her judgment against it.

Reversed and rendered.