L. G. BALFOUR COMPANY v. Z. GOSSETT, BANKING COMMIS-SIONER, ET AL.

No. 7392.   Decided April 20, 1938.
(115 S. W., 2d Series, 594.)

*Wm. H. Flippen* and *John W. Miller,* both of Dallas, for plaintiff in error, L. G. Balfour Company.

Because this suit was pending when the bank went into liquidation, and that, at that time, the Banking Commissioner

was duly notify of the pendency of said suit, and said commissioner authorized attorneys to appear and answer, was sufficient excuse for not first filing a claim with the commissioner. Austin, Banking Comr., v. Second Natl. Bank of Houston, 297 S. W. 626; Brand v. Lindale Canning Co., 85 S. W. (2d) 323.

The act of said corporation in guaranteeing the debt of Jones, if it did, was ultra vires. 10 Tex. Jur. 882; W. C. Bowman Lbr. Co. v. Pierson, 139 S. W. 618; Brand v. Eastland Co. Lbr. Co., 77 S. W. (2d) 600.

*Ocie Speer*, of Austin, for defendants in error.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was originally filed on January 19, 1932, in the 44th Judicial District Court of Dallas County, Texas, by L. G. Balfour Company, a private foreign corporation, against State Trust & Savings Bank, of Dallas, Texas, a banking corporation, duly incorporated under the banking laws of this State, to recover the sum of $2042.50, which L. G. Balfour Company alleged it had on deposit in the above-named bank. For convenience we will hereafter refer to L. G. Balfour Company as Balfour, and to State Trust & Savings Bank, of Dallas, Texas, as the Bank.

On August 4, 1932, the Bank, then a going concern, filed in the 44th District Court its original answer. This answer contained a general demurrer, a general denial, and a special answer.

At some date after this suit was filed, and before it was tried, the above-named bank became insolvent, and was taken in charge by the Banking Commissioner of this State for liquidation. This liquidation was conducted under the supervision and jurisdiction of the 44th District Court of Dallas County, Texas, in accordance with the banking laws of this State at all times after the Bank was taken in charge by the Commissioner.

After the Bank failed, the Commissioner was made a party to this suit, and he appeared, filed pleadings, and made defenses. We shall not attempt any extended statement of the pleadings of the parties. The following is sufficient for the purposes of this opinion.

By its pleadings Balfour sued the Bank and the Commissioner for the sum above mentioned, and for cause of action alleged that it had that amount of money on deposit with the Bank; that the Bank illegally and wrongfully charged Balfour's account therein with the debt of one J. R. Jones in said amount; that Balfour was not in any way responsible for said Jones

debt; and that therefore Balfour was entitled to recover the amount of its deposit.

The Bank and the Commissioner answered and pleaded that one J. R. Jones was indebted to the Bank in the above amount; that Balfour had guaranteed, in writing, the payment of the Jones debt; that Jones had failed and refused to pay such debt; and that the Bank had charged Balfour's account with the amount thereof, as it had a right to do. The Commissioner pleaded that Balfour could not recover against him, because it had not filed its claim with him before making him a party to this suit.

Balfour replied to the above pleadings, and denied that it had ever guaranteed the payment of the Jones debt to the Bank; pleaded that if it had guaranteed such debt, it did so on condition that same was satisfactorily secured, and that such debt was not so secured; pleaded that if Balfour guaranteed the Jones debt, the contract was ultra vires and void; and pleaded that it rested under no duty to file a claim with the Commissioner as a condition precedent to its right to make the Commissioner a party hereto.

As we understand this record, all proceedings up to this time, which occurred in court, occurred in the 44th District Court of Dallas County, Texas. We also understand that the matter of liquidation of the Bank was being conducted in that court. As we further understand this record, after the proceedings above mentioned had all transpired this cause was transferred from the 44th District Court of Dallas County to the 116th District Court of the same county, where it was finally tried. In any event, the suit was transferred to the 116th District Court for trial. The judgment of the 116th District Court decrees that Balfour recover judgment against the Bank for $2042.50, with interest, and costs. It also decrees that Balfour's claim be established as a claim against the Bank with the Banking Commissioner in his official capacity as liquidating agent of the Bank in the same amount. It is, however, expressly provided by the judgment that it be referred and certified to the 44th District Court of Dallas County, Texas, for enforcement.

The Banking Commissioner appealed from the above judgment. We assume that his appeal brought the Bank up as a party. On final hearing in the Court of Civil Appeals that court reversed the judgment of the district court generally, and remanded the cause for a new trial. Balfour applied to this Court for a writ of error. Also, the Commissioner and the Bank in a joint application applied for a writ of error. Such applications were both granted.

1 By proper assignment of error the Bank and the Banking Commissioner contend that the 116th District Court of Dallas County had no jurisdiction to try this case. This contention is based on the theory that, since the Bank was being liquidated under the jurisdiction of the 44th District Court of Dallas County, that court had exclusive jurisdiction of all actions against the Banking Commissioner involving claims against this Bank. The case of Kidder v. Hall, 113 Texas 49, 251 S. W. 497, is cited in support of the above contention. In Kidder v. Hall this Court, speaking through Chief Justice CURETON, held that an action on a claim against an insolvent bank, rejected by the Banking Commissioner, must be brought in the district court of the county in which the bank is located. Also, the Kidder v. Hall opinion holds that an action against the Banking Commissioner on a claim against an insolvent bank in liquidation, which has been rejected by the Commissioner, must be brought either by intervention in the liquidation proceedings or by petition in a proper court. We assume that the opinion means to hold that whether the action be by intervention or by independent suit, it must be brought in the same court in which the insolvent bank is being liquidated. As a general rule the holding in Kidder v. Hall, above indicated, is correct. In other words, it is the general rule that where one has a claim against an insolvent State bank in liquidation by the Banking Commissioner, and such claim has been rejected by the Commissioner, he must file his suit thereon against the Commissioner in the district court in which the bank is being liquidated. In this case, however, we do not think such rule should apply.

The Civil District Courts of Dallas County operate under the terms and provisions of the statutes defining the rules of practice and procedure governing civil district courts in counties having two or more district courts which have civil jurisdiction only, whose terms continue for three months or longer. Articles 2092 and 2093, Vernon's Texas Statutes, 1936. These statutes are too extended and contain too many provisions to admit of a general discussion here, nor is such discussion necessary. It is sufficient to say that under such statutes when a case is pending in one court it may be transferred to another court for trial, as was done in this instance. We think that where a suit against the Banking Commissioner on a claim against an insolvent State bank is pending in the court having charge of the liquidation of such bank, and such court is in a county governed by the above statutes, the case can be transferred to any other court of such county for trial. Of course it is proper in such instances that the judgment be certified to

the court in which the bank is being liquidated for observance. That is exactly what was done in this instance. This ruling in no way conflicts with, or even questions, the general rule announced by the opinion in Kidder v. Hall, supra. That opinion has no reference to cases pending in courts governed by Articles 2092 and 2093, supra. In fact, such statutes were not even in force at that time. There is another reason why we think the rule announced in Kidder v. Hall, supra, should not be applied to this case. Such reason will be discussed later on in this opinion.

**2, 3** The Commissioner and the Bank contend that the pleadings of Balfour allege no cause of action against the Commissioner in his official capacity as such, because such pleadings do not allege that Balfour's claim was presented to and rejected by the Commissioner before he was made a party defendant to this action. It is the general rule of law that under the banking statutes of this State a person must present his claim against an insolvent State bank in liquidation to the Banking Commissioner for allowance or rejection by him, and such claim must be rejected before the claimant has a right to prosecute an action against the Commissioner thereon. It is further the general rule that a petition in such instances which fails to allege that the claim has been presented to and rejected by the Banking Commissioner, or that fails to allege facts which, in law, would excuse the same, is subject to a general demurrer. Kidder v. Hall, supra; Brand v. Conner & McRae, (Civ. App., writ refused) 78 S. W. (2d) 712; City of Harrisburg v. Austin, (Civ. App., writ refused) 279 S. W. 498. This rule is based on the provisions of Articles 456, 457, 458, and 459, R. C. S. 1925, and other applicable statutes of our banking laws. A reading of the above-mentioned statutes will demonstrate that none of them directly provide that no action can be maintained against the Banking Commissioner on a claim against an insolvent State bank unless and until such claim has been presented to and rejected by such Commissioner. The rule simply arises by necessary implication from the provisions of such statutes, to the end that they may accomplish their purposes. These purposes are that the liquidation of failed State banks shall be conducted in an orderly manner, and without unnecessary complications or expense. Such purposes certainly contemplate that the Commissioner shall be given an opportunity to approve or allow a claim before he is put to the expense and trouble of being sued thereon. Also, the provisions of Article 459, supra, which provide "Actions upon a claim rejected must be brought within six months after service," certainly mean to say that

such an action cannot be brought before the claimant has filed his claim with the Commissioner and same has been rejected. In spite of this, we think such rule has no application to a case like this, where a bank, while a going concern, was sued on a claim against it, and thereafter, while such suit was pending, the bank failed and was taken in charge by the Banking Commissioner. In such a case we think it is proper to make the Commissioner a party to the suit, without the formality of first filing the claim with him. In other words, the statutes prescribing the filing of a claim and notice of rejection thereof as a condition precedent to the right to bring a court action against the Commissioner thereon have no application to claims already in litigation at the time the bank fails.

4 · Reverting back to the contention that the 116th District Court of Dallas County had no jurisdiction to try this case as against the Banking Commissioner because the liquidation proceedings were being conducted in the 44th District Court of Dallas County, we think that in instances where a State bank, while a going concern, is sued in a court of then competent jurisdiction in this State on a claim which it is resisting, the failure of the bank does not abate such suit, and it is perfectly proper to make the Commissioner a party thereto, and that regardless of the county in which such court is located. Any other rule would produce an intolerable situation, in that it would produce two suits regarding the same subject matter in separate, independent jurisdictions where contradictory judgments might be rendered. In this connection, the Commissioner admits that where a suit is pending against a bank at the time it fails, such suit may proceed in any event without the Commissioner. We do not express an opinion on that question, but whether true or not it certainly ought to be held proper to make the Commissioner a party,—this for the reasons already stated, and because after the bank fails and is placed in liquidation the duty rests principally upon the Commissioner to defend any pending suit against it. Of course in such instances the judgment should provide for its certification to the liquidating court for enforcement.

5 It is the law of this State that, apart from the limitations which have been established by statute, the power of a corporation is limited to the purposes for which it was incorporated. 10 Tex. Jur., p. 876, Sec. 244. Of course, in all grants of corporate power there exist not only the powers expressly granted, but such implied powers as are necessary, or reasonably appropriate, to the exercise of the powers expressly granted. Lumpkin

v. Brown, (Com. App.) 229 S. W. 498; 10 Tex. Jur., p. 876, Sec. 244. It is also the law that it is not ordinarily necessary for the conduct of a corporation's business that it lend its credit to another corporation, or to an individual. In this connection, it is the law of this State that, in the absence of express charter power, a corporation has no right to stand as surety or guarantor for the debt of another. Northside Ry. Co. v. Worthington, 88 Texas 562, 53 Am. St. Rep. 778, 30 S. W. 1055. In exercising its corporate powers a corporation may foster its business by all the usual means exercised by corporations of its character; but it cannot go beyond this. A corporation "may not, under the pretext of fostering, entangle itself in proceedings with which it has no legitimate concern. In the next place, the courts have however determined that such means shall be direct, not indirect; i. e., that a company shall not enter into engagements, as the rendering of assistance to other undertakings from which it anticipates a benefit to itself, not immediately, but immediately by reaction, as it were, from the success of the operations thus encouraged—all such proceedings inevitably tending to breaches of duty on part of the directors, to abandonment of its peculiar objects on part of the corporation." Northside Ry. Co. v. Worthington, supra. (The above quotation is from the opinion of the Northside Ry. Co. Case, but an examination of the opinion will show that it is in fact a quotation from Green's Brice's Ultra Vires, 88.)

We come now to ascertain if this record contains evidence that would justify a jury verdict upholding the action of the Bank in charging Balfour's account with the Jones debt. In deciding this question we will now apply the rules above announced.

**6** As shown by the record, Balfour was a private Massachusetts corporation, with a permit to do business in this State. The corporate powers of such concern were to "manufacture, buy, sell and generally deal in badges, novelties, jewelry, and all kinds of metal ware, stationery and leather goods, and do all things incidental thereto," etc. Under the above corporate powers Balfour possessed the right to manufacture, buy, sell, and generally deal in goods and merchandise of a certain kind or character. The power to stand as a guarantor or surety for the debt of another was absolutely foreign to its charter or charter powers. In other words, the right to stand as guarantor or surety for another was not included in the charter or charter powers of Balfour, either by express grant or by necessary implication. It follows that any contract it may have given this Bank

to guarantee the payment of the Jonés debt was ultra vires and void.

7. The Bank and the Commissioner contend that Balfour is estopped to plead the defense of ultra vires to its alleged contract of guaranty for the payment of the Jones debt to the Bank, because it, Balfour, received benefits from such contract. The pleadings of the Bank and the Commissioner do not even attempt to set out what these benefits were. Also, we have carefully examined the brief of the Commissioner in the Court of Civil Appeals, and find that it is in the same condition in this regard as the pleadings just mentioned. We have carefully examined the statement of facts, which, under the above statement, we were under no obligation to do, and have found no evidence therein that would justify the submission of this case to the jury as against Balfour's plea of ultra vires. According to the undisputed evidence, Balfour's interest in Jones' transactions with the Bank, here involved, were, at best, indirect and remote. It was not primarily responsible for Jones' debt, absent a guaranty, and the only interest it had in the matter was that if Jones' business should prosper and be properly financed, Jones might sell more of its goods. Any benefit Balfour could have hoped to gain from the Bank extending credit to Jones would have been one "not immediately, but immediately by reaction, as it were, from the success of the [Jones] operations, thus encouraged." Under the plain holding in the Northside Ry. Co. Case, supra, such a benefit is not sufficient to justify the application of the rule of estoppel for benefits received by a corporation as against a plea of ultra vires.

8 There is another reason why we think Balfour should not be held on its contract of guaranty with the Bank, even if the letter which the Commissioner sets out in his brief as constituting such contract would constitute such, a point we do not decide. If we understand this record, Jones borrowed money from this Bank at a time when it is not even contended Balfour was in any way responsible therefor. On August 3, 1931, Balfour wrote the Bank the following letter:

"We have renewed our contract with Mr. J. R. Jones, appointing him our manager for the Southwest with headquarters in Dallas. Under our new agreement Mr. Jones will continue to receive a large and increasing revenue, and I have personally agreed to supervise his finances. Under this arrangement Mr. Jones' note which your bank holds will be gradually liquidated. We will accordingly appreciate if you will renew this note in full at its maturity, with the understanding that graduated pay-

ments will be made in the future. It is our understanding that this note is satisfactorily secured.

"We plan to leave our Texas account with your bank. I am certain you will find our plans satisfactory."

If the Bank has any contract of guaranty from Balfour, it is the above letter. It will be noted that such letter informs the Bank that "It is our understanding that this note is satisfactorily secured." If this letter can be taken as a guaranty at all, it certainly gave the Bank to understand that the guaranty was given on condition that the Jones debt was satisfactorily secured. If this was not true, there was no guaranty. An examination of this record shows beyond a doubt that the Jones note was not satisfactorily secured. In this regard, it is shown that the purported security behind the Jones indebtedness was fictitious stock and an insurance policy that had lapsed. In other words, the supposed security held by the Bank was not satisfactory; but, on the other hand, was absolutely worthless.

The judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed.

Opinion delivered April 20, 1938.