159



## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable V. B. Goer
County Attorney
Blanco County
Johnson City, Texas

Dear Sir:

Opinion No. 0-6635
Re: Is fishing from the bank
of the Pedernales River a
trespass on land of a
riparian owner?

We have your opinion request reading as follows:

"On or about the 15th. day of April A. D.
1945, A. D. Fuchs Jr. who lives on his fathers
land near Cypress Mill, in Blanco County, Texas,
together with his friends J. J. Fuchs and Benhard
Fuchs went down to the Pedernales River on the
land that belongs to the father of A. D. Fuchs
Jr., and when they had reached the river, they
all three went down the river to where Herman
Reimer's land adjoins the river, but they were
near the bank of said river, and never were more
than a few feet from where the bank of the Peder-
nales River exists, and they were all fishing in
the river.

"Question - Are the three persons, namely,
A. D. Fuchs, Jr., J. J. Fuchs, and Benhard Fuchs,
guilty of trespassing on the lands of Herman
Reimer or not?

"The question it seems to me is whether or
not the Pedernales River is a navigable stream
or not. If it is, then, how far are people al-
lowed to go on the bank of said river, and still
be within the land banks. In other words would
these people have the right, if the Pedernales
River is navigable to go up and down the stream
on Reimer's land and fish, and be protected under
the law."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable V. B. Goar, page 2

You are correct in stating that it is necessary to determine whether or not the Pedernales River is navigable at the place of the alleged trespass. If it is not, the bed of the river is owned by the owners of land on each side of the river. Their property lines extend to the middle of the stream. State v. Grubstake, 117 Tex. 53, 297 S.W. 202, Maury v. Robison, 122 Tex. 213, 56 S.W. (2d) 438.

In Texas a stream may be navigable in law without being navigable in fact. If a stream has an average width of 30 feet between its banks from its mouth up to any given point, such portion of the stream is navigable in law and that portion of its bed belongs to the State. Article 5302, Vernon's Annotated Civil Statutes, 34 Tex. Jur. 86.

Whether or not the public has a right to fish from the banks of a statutory navigable stream depends on when the original grant was made. If the original grant was made after January 20, 1840 (2 Gammel's Laws 177, Article 1, Vernon's Annotated Civil Statutes) the common law rule applies. Under that law riparian owners own to the waters edge or within a foot or two of it. City of Austin v. Hall, 93 Tex. 591, 57 S.W. 563, State v. R. E. Jones Gravel Co., (Civ. App.) 175 S.W. (2d) 739, aff. 180 S.W. (2d) 144.

If the original grant was made prior to January 20, 1840, the civil law applies and the rights of the present owners to the land granted must be determined according to the rules of the civil law. Miller v. Letzerich, 121 Tex. 248, 49 S.W. (2d) 404, 85 A.L.R. 451. San Antonio Court of Civil Appeals held in Dincans v. Keeran, 192 S.W. 603, that it was not a trespass to fish and camp on the banks of a navigable stream affected by the ebb and flow of the tide, where the land adjoining the stream was originally granted in 1833, while the civil law controlled. Of course, the Pedernales River is not affected by the ebb and flow of the tide. The only way we can answer your question as to whether or not the same rule applies to navigable rivers not affected by the ebb and flow of the tide, where the grants adjoining the river were made prior to January 20, 1840, is to quote to you what the courts have said on the question. The point has never been definitely decided in Texas and your guess as to what the Supreme Court will eventually hold is as good as ours.

Honorable V. B. Goar, page 3

In Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W. (2d) 441, the Supreme Court said:

"Because of the state's ownership of the beds of statutory navigable streams and of their banks up to the line as above defined, the public may use their beds and their banks up to such line for fishing. Beyond that line, unless the rule of the civil law is applied, they have no right to go without the consent of the riparian landowner. Herrin v. Sutherland, 74 Mont. 587, 241 P. 328, 42 A.L.R. 937; Farnham on Water and Water Rights, vol. 1, p. 659, 661, 662; 11 R.C.L. p. 1033.

"With reference to the civil law, Farnham says: 'By the civil law the public use of the banks of a river was part of the law of nations, just as that of the river itself.' Farnham's Water and Water Rights, vol. 1, p. 662. One of the laws of the Partidas provides: 'And although the banks of rivers are, so far as their ownership is concerned, the property of those whose lands include them, nevertheless, everyman has a right to use them, by mooring his vessels to the trees, by repairing his ships and his sails upon them, and by landing his merchandise there; and fishermen have the right to deposit their fish and sell them, and dry their nets there, and to use said banks for every other purpose like those which appertain to the calling and the trade by which they live.' Las Siete Partidas (C.C.H. 1931), part III, title XXVIII, law VI, p. 821.

"The civil law rule is, we think, more favorable to public ownership than is appropriate to our conditions, and there is no necessity for its application, in view of article 5302 and the construction which has been given to that article.

"The question under consideration is controlled, as far as inclosed land is concerned, by article 1377 of the Penal Code (as amended by Acts of the 41st Leg., 1st Called Sess. p. 242,

162

c. 100, and 2d Called Sess. p. 41, c. 26 (Vernon's Ann. P.C. art. 1377)), which prohibits hunting or fishing upon the inclosed land of another without his consent and defines inclosed land as land which is inclosed by fence or partly by fence and partly by water or stream. This statute prohibits the public from using for fishing the banks of a stream above the line between public and private ownership where the banks are within inclosed premises as by it defined.

"What has been said about the right of the public to use the banks of streams for fishing has, of course, no practical application to the banks of the Medina river, so long as they are submerged by the water of Diversion Lake. We find no authority for holding that the public have as an incident to the right to fish in Diversion Lake a right to use the banks of the lake, and it is our opinion that they have no such right. There are no banks of the lake, either superficially or geologically, comparable to the banks of a river. The water of the lake merely reaches land owned by plaintiff in error at an elevation varying with the quantity of water held in the reservoir. If it be said that the land bordering the water of the lake constitutes the banks of the lake, then where is the top of the banks, and what would mark the outer boundary of the land that the public could use as banks for fishing? Furthermore, the use of plaintiff in error's fast land (that is, the land adjoining but not below the water of the lake) for fishing, without its consent, is prohibited by article 1377 of the Penal Code above discussed, as that land is inclosed partly by fence and party by the water of the lake.

"It is not necessary in this cause to decide, and we do not decide, whether the rights of the public to use the banks of streams in this state where they are bordered by grants made under Spanish or Mexican sovereignty are in any respect different from the rights of the public herein determined. (The grants which Diversion Lake touches

Honorable V. B. Goar, page 5

were made by the state subsequent to 1840.) And
no opinion is intended to be expressed as to what
use may be made in emergency, or in other circum-
stances, of the banks of navigable streams by per-
sons engaged in commercial navigation."

In the recent case of State v. R. E. Janes Gravel
Co., (Civ. App.) 175 S.W. (2d) 739, which was affirmed by the
Supreme Court in Maufrais v. State, 180 S.W. (2d) 144, the
Austin Court of Civil Appeals said:

"Appellants' points 2 and 3 involve the
rights of the State and the City, as representa-
tives of the public or otherwise, to an easement
or servitude upon the south bank of the river
above the boundary line. The State's contention
for such easement or servitude is predicated upon
Laws 6 and 7 of Title 28 of the Partidas (copied
in full in the Grubstake opinion of this court,
272 S.W. 527, at pages 528, 529), which provide
that, although the banks of rivers belong to the
owner of the adjoining estate, 'nevertheless,
every man may make use of them, to fasten his
vessel to the trees that grow there, or to refit
his vessel, or to put his sails or merchandise
there. So fishermen may put and expose their
fish for sale there, and dry their nets, or make
use of the banks for all other like purposes,
which appertain to the art or trade, by which
they live' (Law 6); and that, although trees grow-
ing on the banks are the property of and may be
cut down by the riparian owners, 'yet, if at the
time they are about to cut them down, they find
any vessel fastened, or about to be fastened to
such trees, they can not immediately cut them down,
otherwise they would interfere with the right
which every man has to use the banks of rivers, as
is above said, but if there is no vessel fastened,
nor about to be fastened to such trees by any one,
then they may be cut down and converted to the
owner's use' (Law 7). The Partidas were in force
in Mexico in 1835. Grubstake case, above. Whether
these provisions have been in any way modified or
'adapted' in this State we find it unnecessary to
consider, for reasons stated below."

Honorable V. B. Goar, page 6


        The foregoing is the best answer we can give you to
your inquiry at this time, and we trust that it will be of
assistance to you.

                                Very truly yours

                            ATTORNEY GENERAL OF TEXAS

                            By  *Fagan Dickson*
                                Fagan Dickson
                                    Assistant

FD:db



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN