EAST TEXAS MOTOR FREIGHT LINES
v. POLLOCK PAPER & BOX CO.
No. 13710.

Court of Civil Appeals of Texas. Dallas.
Sept. 30, 1946.

Rehearing Denied Nov. 29, 1946.

Callaway & Reed, of Dallas, for appellant.

Ungerman, Hill & Ungerman, of Dallas, for appellee.

BOND, Chief Justice.

Pollock Paper & Box Company, Inc. (plaintiff below), instituted this suit against East Texas Motor Freight Lines, Inc. (defendant below), on a sworn itemized account for the purchase of 200,000 printed waybills for Great Lakes and Texas Motor Transport, Cleveland, Ohio. The Great Lakes is not a party to the suit. The account is based upon an alleged written purchase order dated March 6, 1944, made out on a printed form of the defendant and signed by G. H. Jones. The order is addressed to Pollock Paper Company, Dallas, Texas, giving it instructions for the printing of "200 M Waybills, fanfold, for Great Lakes, unit price $7.22 M. To be numbered consecutively, beginning where 25,000 order quits off" (signed) "East Texas Motor Freight Lines. By G. H. Jones;" invoices and delivery slips to bear "East Texas Motor Freight Lines Purchase Order No. 9411."

Plaintiff's petition sets out in detail the transaction involved, which is reflected in the trial court's findings and the admission of facts hereinafter mentioned. In effect, plaintiff seeks to establish defendant's liability on alternative theories: (1) That the acts of the agent in negotiating the order were done with authority; (2) that under all facts and circumstances the agent acted with apparent or ostensible authority; and (3) that the purchase of the waybills and all similar prior transactions had with said agent were with the knowledge and acquiescence of his principal, hence defendant is in law estopped to deny liability.

In due course, the defendant filed verified answer under oath consisting of a general denial, plea of non est factum, and

special pleas that the purchase order set out and declared upon was not executed by it or under its authority; that it is not liable for said agent's acts in making the order; and, further, that its duly authorized officers never approved or ratified the transaction in question, but, to the contrary, repudiated the debt. Whereupon, plaintiff presented claim to the Great Lakes and Texas Motor Freight Transport, accepted its payment of $250; and by reasons thereof, plaintiff is estopped to claim that defendant is liable therefor.

On trial to the court without a jury, judgment was entered in favor of the plaintiff against defendant for $1,344.18, balance due on the account with interest; defendant appeals.

It is uncontroverted that G. H. Jones was the purchasing agent of the defendant corporation and had actual authority to purchase for it office supplies, blank forms, and the like, and to make purchasing contracts in reference thereto. The primary question involved here is the liability of defendant on the contract of purchase made by said agent for the use and in behalf of Great Lakes and Texas Motor Transport. There is no evidence that Jones had actual or apparent authority to make the purchase of the waybills for the use and benefit of the Great Lakes; on the contrary, the evidence is that he did not have such authority, and that plaintiff acted on the order in accordance with the recitation and information imparted therein.

In limine, and for the purpose of this action, subject to the conditions in Rule 169, Texas Rules of Civil Procedure, plaintiff made written request of the defendant for admissions of fact which the trial court sustained and adopted; which, we think, reflect the record here presented, as follows:

"1. That on the 6th day of March, 1944 G. H. Jones, who was then the Purchasing Agent of the defendant, East Texas Motor Freight Lines, executed and delivered to the agent of the plaintiff a written instrument which is a printed form termed a purchase order, which was numbered No. 9411, ordering 200,000 Waybills fanfold for Great Lakes, at a consideration of $7.22 per thousand and to be numbered consecutively beginning where a previous order of 25,000 bills left off, and said order was signed 'East Texas Motor Freight Lines by G. H. Jones.'

"2. That on March 7, 1944 plaintiff sent a written acknowledgment of the purchase order described in paragraph 1 which was addressed to East Texas Motor Freight Lines, Dallas, Texas, which acknowledgment was dated March 7, 1944, addressed to East Texas Motor Freight Lines, Dallas, Texas, attention G. H. Jones, and which acknowledged receipt of 'your order' placed with Mr. Bright, agent of the plaintiff, for 200,000 7 part fanfold letter press freight waybills, printed per copy submitted for Great Lakes & Texas Motor Transport, consecutively numbered from last number of 25,000 order now in work and up at $7.22 per thousand, f. o. b. mill, shipped to Great Lakes & Texas Motor Transport, Cleveland, Ohio, via motor freight; terms 1% in 10 days or 30 days net. That such acknowledgment was enclosed in an envelope addressed to the defendant, and sufficient postage for transmittal to the defendant affixed thereto, and same was deposited in the United States mails at Dallas, Texas. That such acknowledgment was received in due course of mail by the defendant.

"3. There is an established and well known usage and custom in the printing trade in Dallas, Texas, that on all orders for specially printed matter in the nature of waybills, that there may be an overrun or underrun of such printed matter amounting to 15% of the total number of printed items requested in an order for such specially printed matter; that such usage and custom was known to the defendant, that it had contracted and paid bills in accordance with such usage and custom. That according to such custom and usage a completed order containing 15% more or less than the amount of specially printed matter ordered would be accepted and paid for on a prorata basis of the contract price for the amount actually received.

"4. That the plaintiff furnished 220,-800 waybills as prescribed in the written purchase order described in paragraph 1 and the custom and usage described in paragraph 3; and shipped such waybills on June 24, 1944, to the Great Lakes and Texas Motor Transport at Cleveland, Ohio, and such shipment of waybills was received by Great Lakes and Texas Motor Transport on June 28, 1944, and accepted by it.

"5. That the total contract price arising by reason of the transaction is the sum of 220,800 waybills at the rate of $7.22 per thousand, or $1,594.18, with interest thereon at 6% per annum from July 28, 1944.

"6. The sum of $1,594.18 with interest at the rate of 6% per annum from July 28, 1944, is past due and unpaid, except the sum of $250.00 which was paid on November 3, 1944, by check of the Great Lakes and Texas Motor Transport, and which amount was credited by plaintiff on the principal of the indebtedness, leaving a balance due in the sum of $1,344.18, with interest at the rate of 6% per annum on the original principal from July 28, 1944, to November 3, 1944, and on the balance thereon from November 3, 1944."

It will be seen from appellee's pleading and evidence that, at the time the order in question was given, its agents knew that the waybills were to be printed in the name of Great Lakes & Texas Motor Transport, and were to be shipped to it at Cleveland, Ohio; and, further, that they were so shipped and receipted for by the consignee. It therefore appears as a matter of law that the transaction in question was ultra vires and beyond the corporate powers of the defendant corporation, in that the credit of defendant, a domestic corporation of Texas, was being extended for the purchase of merchandise for the use and benefit of another, which is expressly prohibited by the statutes of Texas. Arts. 1348, 1349, Vernon's Ann. Civ.Statutes.

It is well settled rule of law that where liability is sought on a contract of a kind that a corporation ordinarily has no power to enter into, the special facts and circumstances to entitle plaintiff to sue thereon must be alleged and proven to sustain liability; and where one deals with a corporation and has sufficient information to put him upon inquiry as to the authority of the one with whom he is dealing and the liability of the one for whom he is acting, he is chargeable with notice of all incidental matters affecting the legality of the transaction. There can be no implied authority, or liability, in the case of a contract, as here, made on behalf of a corporation where the contract on its face shows that it is ultra vires. The defendant's verified answer, under oath, setting up non est factum and denial of the execution of the written instrument upon which appellee's petition is framed, destroys not only plaintiff's prima facie case made by statute on its verified account, but casts upon it the burden of introducing proof, other than the instrument itself, to support its cause of action. Plaintiff having alleged and attached to its petition copies of the order and its confirmation, or acknowledgment, which upon their face show the illegality of the transaction; and the prima facie case on its verified sworn account having been voided by defendant's plea of non est factum for lack of proof of authority of defendant's agent to execute the order, the burden was then cast upon the plaintiff to show that defendant corporation either derived profits, or that it contemplated some profit or benefit from such alleged ultra vires transaction. In the absence of such allegations and proof, plaintiff failed to establish its claim against defendant. Bowman Lumber Co. v. Pierson, Tex.Civ.App., 139 S.W. 618; Id., 110 Tex. 543, 221 S.W. 930, 11 A.L.R. 547.

The aforesaid statutes (Arts. 1348, 1349) having been applied in a number of authorities in this State, the tenor of the holdings is to the effect that one corporation cannot lend its credit to another. Newton v. Houston Hot Wells Imp. Co., Tex.Civ.App., 211 S.W. 960; Al & Lloyd Parker, Inc., v. Cameron County Lumber Co., 56 S.W.2d 256; Id., 122 Tex. 487, 62 S.W.2d 63; Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 53 Am.

St.Rep. 778; Balfour Co. v. Gossett, 131 Tex. 348, 115 S.W.2d 594. In the Bowman case, above cited, Chief Justice Phillips used the following language pertaining to the obstruction of one corporation lending its credit to another [221 S. W. 931]:

"The pledging by a corporation of its credit for another's benefit as a means simply of enabling him to purchase its goods, is not a direct, and hence not a legitimate, means of promoting its own business. It is a means purely indirect, and any benefit derived by the corporation from the transaction is equally indirect. It is not a fostering of the business of a corporation to pledge its capital as security for the debts of prospective customers for the purpose of enabling them to buy its wares. It is inviting its destruction. The creation of custom by such a method is only a delusive benefit to the corporation at best, for the price of it is to jeopardize its capital, not for its own direct benefit, but for the private advantage of another. Its benefit from such a transaction can be only incidental. Such use of its credit is clearly beyond the power of an ordinary business corporation, such as the Lumber Company here. Northside Railway Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 53 Am. St.Rep. 778. While a writ of error was refused by this court in Munoz v. Brassel, the question of the power of the corporation to pledge its credit under the circumstances there shown, was not presented in the application for our review."

The contract—order and acknowledgment—in suit, specially pleaded and established by proof, being void ab' initio, and no element alleged or proven to establish liability upon defendant corporation, the judgment ,of the court below is reversed and here rendered in favor of appellant.

## On Rehearing.

### PER CURIAM.

Appellee's motion for rehearing presents matters which we have concluded that it may be able to plead and prove on another trial. The record here does not disclose the business connection, if any, that appellant East Texas Motor Freight Lines had with the Great Lakes corporation at the time the purchasing order was given by their agent Jones, and the profits, if any, appellant received or contemplated, as to hinge liability on it for the waybills ordered. However, adhering to our former conclusion that there is no sufficient pleadings or evidence here presented showing liability of the appellant in lending its credit to another for the goods ordered, upon insistence of the appellee, we conclude that the cause should be remanded for another trial, thus giving appellee opportunity, if it may, to show liability on appellant which is not present in this appeal. In consequence, the judgment heretofore rendered in favor of the appellant is set aside, and the cause reversed and remanded to the court below for new trial; otherwise, appellee's motion for rehearing is overruled.